McINTYRE, APPELLEE, v. KUHNS BROTHERS COMPANY ET AL., APPELLANTS.

(No. 5557—Decided December 5, 1977.)

*E. S. Gallon & Associates* and *Mr. David A. Saphire,* for appellee William McIntyre.

*Messrs. Smith & Schnacke,* and *Mr. Samuel A. McCray,* for appellant Kuhns Brothers Company.

*Mr. William J. Brown,* attorney general, and *Mr. James Weprin* for appellant Kenneth E. Krouse, administrator, Bureau of Workmen's Compensation.

McBRIDE, J. This appeal is a typical workmen's compensation case which brings out the distinction in R. C. 4123.01(C) between an injury caused by external accidental means and the amendment that added injury accidental in character and result.

The injury claimed was a compression or entrapment of the ulnar nerve at the left elbow. The plaintiff was an employee pouring molten iron in a foundry. While there is testimony of a mishap by way of a mechanical failure in a locking device while pouring that would qualify as an external accident, the thrust of the plaintiff's testimony relates to a continuous day of unexpected heavy work, faster than usual, with no rest periods and only fifteen minutes for lunch. In this context and the state of the evidence the mishap became a part of the total day's work and an unexpected event. The physical injury was not "spontaneous," as defendant argues, in that its onset was not immediate; however, the plaintiff argues that the injury was accidental in character and result even though not immediately evident.

The jury found for the plaintiff and on appeal the employer relies upon four assignments of error.

1.

For its first assignment the defendant asserts error

of the court in refusing to sustain a motion to dismiss at the end of the plaintiff's case.

At this point the trial judge denied the motion on the basis of accidental means; that is, the failure of the locking device and the strain and pain produced. The medical testimony linked the causal factor to the total strain of the unusual day's work; however, while the reason expressed may have been incomplete, as the court indicated later, the issue of injury accidental in character and result was in the record and justified the dismissal of the motion.

This assignment is denied.

2.

The second assignment of error is based upon a claimed instruction that erroneously distinguished between "injury resulting from a sudden mishap or event" and "disease resulting from a gradual process extending over a long period of time."

Here we find confused rhetoric and issues. We gather from defendant's argument that it insists that the amendment to the definition of injury, adding injury accidental in character and result, requires that the result be sudden and spontaneous with some particular event and that the onset of the pain and injury be immediate, accompanying the sudden event. Such a construction defeats the purpose of the amendment by the legislature.

In this connection the defendant equates disease with a physical condition that is not sudden and spontaneous and insists that there may be no recovery for a disease. Disease is mentioned in *Phillips* v. *Borg-Warner . Corp.* (1972), 32 Ohio St. 2d 266, in which a crane operator suffered a disability from exposure while working outside under unfavorable weather conditions. The court held that exposure to the weather while on the job was insufficient, citing an infectious disease case. *Johnson* v. *Indus. Comm.* (1955), 164 Ohio St. 297. In the instant case the causal facts and injury are all of an industrial activity situation and relate to a nerve injury not to infection or disease. There is in fact no issue of disease before the court. Its injection is one of collateral argument. Further, the distinc-

tion involved in the case, even if reference to a disease were made, was not with sudden external accident but with the second phase of the statutory definition of injury—accidental in character and result.

The appellant fails to reference this argument to testimony relating to a disease and in the absence of a request or objection on this question any possible errror was waived.

This assignment is overruled.

### 3.

This assignment complains of a failure to properly frame the issues and instruct the jury on the salient facts upon which each litigant relied in support of its claim.

For this claim of error in failing to *instruct the jury on the salient facts* appellant relies upon the court's duty to outline the *issues* and points to his requests (4, 5 and 6) in each of which he insists that in establishing an unexpected result plaintiff must establish as a fact that at 9 p. m., on April 1, 1975, he suffered a sudden and spontaneous injury and pain contemporary with his activity at that time.

In describing the function of the trial judge in instructing the jury *salient* facts is a strong word reminiscent of the English system of commenting on the evidence. *Salient* in this context means conspicuous; outstanding; noticeable. In military terms it refers to the outpost or trenches projecting farthest into the enemy's territory. The origin of the word suggests a leaping, aggressive action of the Salian war priests of Mars in Roman beliefs. Such a posture on the facts of a case is not appropriate for an impartial trial judge.

Shaving the energetic language one expects in briefs, it appears that appellant suggests that the trial judge should include in his instructions the chief or more important evidence. It is possible in some cases to do this where the issue is very simple. Where the factual issues involve whether the traffic light was red or green, we find such a possibility. In that situation the simple factual issue is complicated by the traditional trappings of a general ver-

dict presentation and submission required under the rule. Civ. 49. However, as we can appreciate from the Ohio experience, the number of simple cases that yield to this type of special verdict submission is limited.

Under the current practice the issues in a case are suggested by the pleadings and are made up by the facts produced at trial. The facts produced carry varying degrees of significance: some may, indeed, be salient; others important or insignificant. At this point we become entangled with what weight the jury may give to each as it assigns the degrees of credibility to the witness. The only safe instruction for the trial judge includes only those facts in a civil case that are admitted or undisputed. The jury should not be troubled with either undisputed issues or *undisputed facts* in a civil case.

For instructional purposes, disputed facts serve no purpose other than to develop and outline the issues and essential law. A narrow, clear and precise statement of those issues opens the door to the appropriate law and provides an orderly arrangement for presentation to the jury. Facts essential to recovery or for defense make up the issues and must be outlined; however, other facts or testimony that do not rise to determinative issues should be avoided by the court under the traditional method of instructing the jury. As a corollary to this, the court should not indulge in argumentative instructions or those which assume or unnecessarily emphasize facts. The latter involve comment on the evidence, an undertaking engaged in at considerable peril.

In the instant case the trial judge refused the factually narrow and incomplete requested instructions. While several reasons justify the denial, the court did explain that counsel could review the claims of his client in argument, but the court would not go into the specific facts produced at trial.

We find no error in this assignment.

If the appellant made any objection for the reasons given under this assignment we have not located it in the record.

### 4.

For the fourth assignment appellant claims error in the instruction "by unfairly emphasizing the claim of the plaintiff at the expense of and to the prejudice of the claim of the defendant-appellants."

In an industrial or other case, where there is no counterclaim, the plaintiff has a burden of establishing his case. The response of the defendant is a denial of that claim and not, as stated in the assignment, a separate issue of the defendant. The instructions are therefore related to but a single claim and the negative elements of that issue. Under these circumstances there can be no measurable equality in the volume of words used to outline and explain the respective "claims" of each party. There is but one claim and all instructions are necessarily directed to it.

This assignment is directed to repetition and over emphasis of plaintiff's claim. It is true that repetition may be overdone and tend toward prejudice; however, some repetition is inescapble in the submission of a general verdict and, at other times, it may be properly used for clarity and understanding of critical questions. The test for what is undue emphasis repetition is necessarily a difficult and intangible one that can be measured only by construing the charge in its entirety to detect if there is any prejudice. Cases in this area of instructions support the discretion of the court in its choice of language and emphasis.

In the instant case the repitition and emphasis referred to by appellant is minimal and cannot be construed as either error or prejudicial. Again, we do not find an objection in the record on this score. Both counsel responded that they were "satisfied with the charge." Objections were preserved at this point on the objections to special requests submitted by each party; however, we find no objection or reference to an objection on the basis of unfair emphasis as argued.

This assignment is denied.

*Judgment affirmed.*

SHERER, P. J., and KERNS, J., concur.