(No. 51796—Decided
April 6, 1987.)

*Spangenberg, Shibley, Traci &
Lancione, Thomas A. Heffernan* and
*Peter J. Brodhead,* for appellants.

*Weston, Hurd, Fallon, Paisley &
Howley* and *Donald H. Switzer,* for appellee.

ANN McMANAMON, J. Donald M.
Sweet brought suit against Clare-Mar
Camp, Inc. claiming that he sustained
injuries while using a water slide at the
defendant's campground. His wife,
Beverly, sued for loss of consortium.
The Sweets now appeal a jury verdict
for the defendant. They raise five
assignments of error,[1] challenging *ex*

deliberations in the absence of and without
the prior consent of counsel."

### III

"The trial court erred in advising the
jury that they need not decide questions
submitted to them which, according to the
court's own charge, were required to be
decided in order to determine the question
of negligence."

### IV

"The trial court erred in submitting the
issue of plaintiff's status to the jury and in

---

[1]

### I

"The trial court erred in commenting
on the evidence at the conclusion of its instructions to the jury."

### II

"The trial court erred in communicating with the jury during their

*parte* communications by the court with the jury on substantive issues, impermissible *sua sponte* submission of interrogatories by the court and improper charges to the jury on issues not germane to the case.

Their claims of error are essentially well-taken and require reversal and remand for a new trial.

Clare-Mar Camp, Inc. is a family-run campground owned by Leonard and Barbara Sears. The camp includes a swimming lake equipped with sixteen-and-one-half-foot and fifty-foot slides. No restrictions or signage govern their use.

Donald Sweet, accompanied by various family members and friends, arrived at Clare-Mar Camp on the evening of Friday, August 12, 1983. Having paid an admission fee, they were permitted access to all camp facilities.

On Saturday morning the Sweet group approached the swimming lake sometime before 10:00 a.m. Aware that camp rules prohibited use of the lake until that hour, Sweet and the others testified at the trial that they did not immediately enter the water. Instead, they averred that they asked a young woman, who they assumed was a lifeguard, whether they could use the small slide. According to the Sweets, this young woman, who was wearing a bathing suit and a whistle about her neck, gave permission, but instructed them to wait until 10:00 a.m. She further advised them to pour water on the slide before using it. The Sweets claim that they entered the lake only after the woman blew her whistle indicating it was 10:00 a.m.

Donald Sweet, Jr. stated that he went down the slide first and found the water so shallow that he hit his back on the lake bottom. According to the son, he was unable to warn his father before the senior Sweet proceeded down the slide. Sweet testified that as he entered the water, his feet hit the lake bottom causing serious injury to his left ankle.

Experts for each side provided conflicting opinions as to the safety and dangers attendant upon use of the slide, the depth of the water and Sweet's point of entry into the water from the slide. Conflicting medical testimony as to the nature of Sweet's injuries also was introduced.

In addition to the opinion of the camp's expert witness, its defense was based upon the testimony of Leonard Sears and other park employees who claimed that the accident occurred before 10:00 a.m. Sears' son further averred that "some woman" stated that Sweet broke his leg on the grass.

## I

We will combine the questions raised concerning the court's *ex parte* communications with the jury in our analysis.

In their first assignment of error, the Sweets assert that the trial court committed reversible error in commenting upon the evidence in its instructions to the jury.

The record reflects that, following the court's initial charge to the jury, defense counsel untimely requested that an additional "issue" be submitted. Over plaintiffs' objections, the court granted the request. After the jury returned from lunch, but before it began to deliberate, the court, in the

---

sending select instructions on this issue for the jury's deliberations."

## V

"The trial court erred in *sua sponte* sub-

mitting interrogatories or questions to be answered by the jury and in submitting defendant-appellee's untimely interrogatory."

absence of counsel, made the following statement to the jury:

"At the request of defense counsel I added one issue, which I had not included before, but which I think properly should be included. Do you find that the accident occurred in connection with the plaintiffs' use of the slide? Remember, there was [*sic*] claims that he slipped in the grass or something and so on."

It is the Sweets' contention that this supplemental instruction constituted an impermissible comment upon the evidence.

First, we note that the defense argues that the Sweets' counsel knew of the court's intention to reconvene the jury and chose not to attend, thus waiving any right to assign as error the court's comments. This argument is spurious. The Sweets timely objected to the substance of the instruction. Furthermore, the record reveals that the court told counsel that it would submit defense counsel's additional inquiry. The court gave no indication that it would elaborate upon the question in this regard or otherwise single out evidence for specific mention.

It is well-established that a trial court must not unduly emphasize the facts supporting one party's claims. See *McIntyre* v. *Kuhns Bros. Co.* (1977), 54 Ohio App. 2d 131, 8 O.O. 3d 245, 375 N.E. 2d 1264. The court also should carefully avoid conveying its own prejudices and biases to the jury. See *Metropolitan Life Ins. Co.* v. *Howle* (1903), 68 Ohio St. 614, 68 N.E. 4. Further, the jury should rely on its collective memory as to the evidence introduced by each party, and a court must refrain from reciting its own version of the evidence.

The Sweets specifically argue that the court's comments were improper because the "claims" referred to were introduced through hearsay testimony and that by using the words "so on" the court implied that the hearsay was corroborated.

Without attempting to evaluate the impact of the court's reported remarks, our prime concern is their utterance in the absence of counsel. It is impossible for counsel or for this court to know the tone of voice in which this instruction was conveyed. We recognize that the English language is susceptible to various interpretations depending upon the emphasis placed on different words. We also recognize that the evidence highlighted by the court was disputed.

We hold the court's delivery of an instruction particularizing a portion of the evidence, outside the presence of counsel, to be an unsupportable irregularity.

The Sweets' second and third assignments of error also challenge the court's *ex parte* communication with the jury.

At the close of its formal charge to the jury, the court provided the panel with a series of written interrogatories to be answered during their deliberations.

The record demonstrates that the court received the following question, presumably signed by a member of the jury during its deliberation:

"If we feel that there is no negligence on the part of the defendant do we still have to have a definite answer to #3 and #4. We are all in agreement."

The questions to which the note refers are as follows:

"3. Did plaintiff or did he not, contrary to that regulation, use the small slide and enter the lake before 10:00 a.m. on August 13, 1983?

"4. Under the circumstances present, if your answer to previous question was yes, did this action change plaintiff's status from that of an invitee, business visitor, to that of a licensee or trespasser?"

The court responded to the jury *dehors* the record. Counsel agree that the court informed them by telephone that the jury had submitted a question. Both lawyers proceeded to the courthouse. However, without waiting for their arrival, the court addressed the jury. Counsel arrived just as the panel was leaving the courtroom.

It is well-established that it is error for the trial court, in the absence of counsel, to give additional instructions to the jury after it has retired for deliberation. See *Hrovat* v. *Cleveland Ry. Co.* (1932), 125 Ohio St. 67, 180 N.E. 549, paragraph one of the syllabus; *Krieger's Cleaners & Dyers, Inc.* v. *Benner* (1931), 123 Ohio St. 482, 175 N.E. 857, paragraph two of the syllabus. Such communication is wholly inappropriate and often constitutes grounds for reversal. See *Hrovat, supra*; *Krieger's Cleaners & Dyers, supra*.

In very limited circumstances, reviewing courts have found a trial court's *ex parte* communication on peripheral matters with a jury to be harmless. See *Rushen* v. *Spain* (1983), 464 U.S. 114. However, in the instant case, the court's communications ostensibly related to the substance of the jury charge.

It was incumbent upon the court to provide counsel, who are advocates, with the full opportunity to monitor the substance and delivery of the court's presentation, to voice appropriate objections and to provide legal insights. In view of a silent record we are unable to determine the propriety of the court's words to the jury concerning its note or otherwise.

The Sweets challenge to the court's *ex parte* statements is well-taken.

II

In their fourth assignment of error, the Sweets contend that the trial court erred by instructing the jury to determine if Donald Sweet was an invitee, licensee or trespasser at the time of his injury.

A "business invitee" is one who is "upon the premises of another, by invitation, express or implied, for some purpose which is beneficial to the owner. * * *" *Light* v. *Ohio University* (1986), 28 Ohio St. 3d 66, 68, 28 OBR 165, 167, 502 N.E. 2d 611, 613. See, also, *Scheibel* v. *Lipton* (1951), 156 Ohio St. 308, 46 O.O. 177, 102 N.E. 2d 453. It is the duty of the owner to exercise ordinary care in maintaining the premises in a safe condition. *Presley* v. *Norwood* (1973), 36 Ohio St. 2d 29, 65 O.O. 2d 129, 303 N.E. 2d 81.

It is properly undisputed that Donald Sweet's status, upon payment of the camp's admittance fee, was that of an invitee. The Sweets further argue that on the basis of this fee, Donald Sweet was an invitee as a matter of law throughout his stay at the campground. The defense argues that because Donald used the slide before 10:00 a.m. in violation of camp rules, his status changed to that of licensee or trespasser. We disagree.

A "licensee" is one who enters upon the premises of another, by permission or acquiescence, for his own benefit or convenience. See *Hannan* v. *Ehrlich* (1921), 102 Ohio St. 176, 131 N.E. 504, paragraph two of the syllabus. Conversely, a "trespasser" is one who " '* * * enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise' " (emphasis deleted). *Garrard* v. *McComas* (1982), 5 Ohio App. 3d 179, 181, 5 OBR 363, 365, 450 N.E. 2d 730, 732, quoting from 2 Restatement of the Law 2d, Torts (1965), Section 329.

We recognize that the status of an individual upon another's land may change while he remains on that land. See *Clary* v. *McDonald* (1963), 120

Ohio App. 8, 28 O.O. 2d 169, 200 N.E. 2d 805. According to 2 Restatement of the Law 2d, Torts (1965) 181, 182, Section 332, Comment *l*, "[i]f the invitee goes outside of the area of his invitation, he becomes a trespasser or a licensee, depending upon whether he goes there without the consent of the possessor, or with such consent. * * *" However, we find that such an analysis has no application to the instant case.

In support of its argument that Sweet's status changed because he used the slide before 10:00 a.m., the defense cites *Clary* v. *McDonald, supra*. In *Clary*, the plaintiff was a customer in the defendant's tire store. As a business invitee, the plaintiff was entitled to enter only those areas open to customers. The plaintiff's injuries occurred in a machine shop reserved for use by employees only. The *Clary* court noted that the duty to make the premises reasonably safe for customers is " '* * * limited to that part of the premises designed, adapted, and prepared for the accommodation of customers, or to which customers may reasonably be expected to go. * * *' " *Id.* at 11, 28 O.O. 2d at 171, 200 N.E. 2d at 807. Thus, the court held that having entered, for his own pleasure, an area in which he had no business to transact, the plaintiff's status changed to that of a licensee. We find *Clary* distinguishable from the instant case.

At the time of his injury, Donald Sweet was in an area specifically maintained for use by the camp's guests. Whether it was 9:55 a.m. or 10:00 a.m. the design of the slide, the water depth at its lip, and the absence of restrictions governing the slide's use remained the same. The record is devoid of any evidence that Sears or the lifeguards ever barred campers from using the slide during periods of low rainfall or otherwise. In fact, the defense argued that the water depth was adequate at all times. Furthermore, the

defense admitted that Sweet used the slide properly and that the time of his injury was irrelevant to the manner in which it occurred. In light of these facts, we find that the camp's duty to warn of unreasonable and unsafe conditions attendant upon use of a permanent fixture, specifically provided for campers, was not affected by the 10:00 a.m. lake opening time. Clearly, the opening time, coinciding with the arrival of the lifeguard, was designed to protect swimmers from drowning. Thus, the trial court erred by charging the jury on the law of licensees and trespassers.

We further note that the court compounded this error by submitting to the jury, outside the presence of counsel and without prior notice to the parties, written instructions on this area of the law. Interrogatories submitted to the jury also required the panel to determine if Donald Sweet was an invitee, licensee or trespasser at the time of his injury. We find that the court's actions diverted the jury's attentions to non-issues and constituted reversible error.

Accordingly, this assignment of error is well-taken.

### III

In their fifth assignment of error, the Sweets assert that the trial court erred in *sua sponte* submitting interrogatories to the jury. They also challenge the submission of an untimely defense query. We have already addressed the *ex parte* aspects of these alleged errors as well as the substantive law included in the questions to the jury. Thus, our discussion of this final assignment of error is limited to the procedural issues raised.

At the conclusion of its charge to the jury, the court *sua sponte* stated that it would submit "questionnaires" with the general verdict forms and instructed the jury to answer "yes" or

"no" in the blanks following each question. Neither party had requested the use of interrogatories and the Sweets voiced a timely objection to their submission. Thereafter, the defense made a Civ. R. 49 request for submission of the court's interrogatories to the jury. The defense also asked that the court submit an additional question.

The record demonstrates that the court did not address the Sweets' objection. However, the court subsequently had the questionnaire retyped, omitting the answer blanks and, in the absence of counsel (as we have previously noted), instructed the jury that he deleted the answer blanks, stating, "So these are just issues that you will have to decide, questions that are before you."

The Sweets argue that the questions nonetheless constituted interrogatories and that the court erred in their submission in that fashion.

Civ. R. 49 governs the use of interrogatories and provides, in pertinent part:

"(B) General verdict accompanied by answer to interrogatories. The court shall submit written interrogatories to the jury, together with appropriate forms for a general verdict, upon request of any party prior to the commencement of argument. Counsel shall submit the proposed interrogatories to the court and to opposing counsel at such time. * * *"

We have previously held that a court is prohibited from *sua sponte* submitting interrogatories to the jury. *Dawson* v. *Cleveland Metropolitan Gen. Hosp.* (Nov. 20, 1986), Cuyahoga App. Nos. 51052 and 51779, unreported, at 19. This position, which is consistent with the language of Civ. R.

49, also has been adopted by the Franklin County Court of Appeals. See *Dyche Real Estate Fund* v. *Graves* (1978), 55 Ohio App. 2d 153, 9 O.O. 3d 321, 380 N.E. 2d 767. Civ. R. 49 clearly grants to the parties the sole prerogative of requesting interrogatories in order to test the basis of the jury's verdict. The function of the trial court in charging the jury is to delineate the issues and to provide the law of the case and necessary procedural instructions. By *sua sponte* submitting interrogatories, a trial court infringes upon the parties' right to structure their case.

We further note that the defense attempted to rectify the court's actions by voicing a Civ. R. 49 request for interrogatories after the Sweets' objections to their submission. The rule clearly provides that such requests must be made before closing arguments. This requirement is necessary to provide the parties with an opportunity to address the interrogatories in their final presentations to the jury. Thus, counsel's untimely request did not rectify the court's error.

However, the questions submitted to the jury in the instant case arguably related to the court's charge, and we hold, procedurally, that their submission was harmless error.

Accordingly, this assignment of error is overruled.

The judgment of the trial court is reversed and the cause is remanded for a new trial.

*Judgment reversed*
*and cause remanded.*

MARKUS, C.J., and KRUPANSKY, J., concur.