KUBISZAK, Appellee,

v.

RINI'S SUPERMARKET, Appellant.

[Cite as *Kubiszak v. Rini's Supermarket* (1991), 77 Ohio App.3d 679.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 59108.

Decided Oct. 15, 1991.

Behrens & Gioffre and *Joseph R. Gioffre,* for appellee.

*Gallagher, Sharp, Fulton & Norman* and *Mark B. Smith,* for appellant.

HARPER, Judge.

Plaintiff-appellee, Elaine Kubiszak, brought a negligence action against defendant-appellant, Rini's Supermarket, for injuries sustained as a result of a trip and fall in the appellant's parking lot. A jury returned a verdict for Mrs. Kubiszak in the amount of $46,900, to be reduced by fifteen percent comparative negligence.[1] The trial court consequently entered judgment for Mrs. Kubiszak in the amount of $42,160. It is from this judgment that appellant now appeals and for the reasons that follow, we affirm.

I

On April 29, 1986, Mrs. Kubiszak, along with her husband and dog, arrived at the Rini's Supermarket located at 7200 Brookpark Road, Cleveland, Ohio, between 12:30 and 1:00 p.m. Mrs. Kubiszak shopped at this particular store three to four times a week for a period of six to seven years prior to the incident which resulted in this action. Mr. Kubiszak parked their truck in a portion of the parking lot that was unfamiliar to them since construction obstructed them from their normal entrance and parking area. The parking lot was crowded that day, but Mr. Kubiszak found a space between two parked vehicles near to the store.

The Kubiszaks exited the store after forty-five minutes to an hour with four bags of groceries. Mrs. Kubiszak carried the two lightest bags. Mrs. Kubiszak, while walking towards the truck, focused her attention primarily on it. According to Mrs. Kubiszak, the next thing she remembered was, "looking up trying to grab for the bumper of the truck and wondering why my husband is standing above me looking down at me." Mr. Kubiszak picked up his wife who blacked out momentarily and regained consciousness to extreme pain. Mr. Kubiszak drove home, dropped off the dog and the groceries, briefly examined his wife's ankle and proceeded to take her to the hospital.

An x-ray of Mrs. Kubiszak's ankle revealed a severe sprain with torn tendons and ligaments. An elastic bandage was wrapped around the injury. Although she returned to a physician one and one-half to two weeks later and mentioned the continued difficulty with the ankle, it was not until July 1986 that a cast was set for weight bearing purposes. She was also placed on Motrin. The cast was replaced with an air splint towards the end of August. Commencing in September 1986, and continuing until December 1986, Mrs. Kubiszak participated in a physical therapy program at University Hospitals.

---

1. Thomas Kubiszak, the husband of Elaine Kubiszak, was a plaintiff in the original action. The jury found against Mr. Kubiszak on his claim of lack of consortium. Mr. Kubiszak is thus not a party to this appeal.

She also began wearing high-top shoes to maximize ankle support. All of these treatments helped to an extent but never completely removed the pain.

Consequently, in October 1987, Mrs. Kubiszak underwent surgery to remove inflamed tissue from the side of her foot. According to the videotaped deposition of Dr. Robert Zaas,[2] only a small number of victims who suffer sprained ankles require this follow-up surgery to control pain.

Four days after her return home from the hospital, Mrs. Kubiszak suffered complications and was taken to the emergency room. She was placed in another cast as a result of the complications. She continued with her physical therapy thereafter.

Mrs. Kubiszak visited Dr. Zaas, an orthopedic surgeon, on January 10, 1989 at the suggestion of her attorney. Although she suffered from less pain and swelling, swelling remained and the strength in her ankle was reduced as a result of the sprain. Dr. Zaas's examination revealed Mrs. Kubiszak's inability to fully flex her ankle up and pain when the ankle was turned inward. Dr. Zaas recommended shoewear and activity restrictions and another medical procedure, the latter being rejected by Mrs. Kubiszak.

Mrs. Kubiszak, in her amended complaint, alleged that a hole in Rini's parking lot directly and proximately caused her injury. The "hole" was a cave-in of the concrete at the juncture of the concrete slabs. The Kubiszaks did not see the hole, which was located between the yellow lines of an adjacent parking space, when they exited their truck because it was covered by a vehicle. Hence, when Mrs. Kubiszak returned to the truck, she fell in the hole which was no longer covered by a vehicle, sustaining her injury.

Tony Spitalieri was the store manager at the Brookpark Rini's when Mrs. Kubiszak fell in the parking lot. One of the duties of a store manager was to insure customer safety by reasonably maintaining the parking lot, which was estimated to have a vehicle capacity of one thousand. Maintenance inspection procedures included either daily or twice-a-day informal checks for holes and defects. Additional inspections were sometimes conducted by assistant managers and cart boys. As employees were required to park farther from the store, inspections were sometimes made while walking towards the store. Closer attention was generally given to the spaces nearer to the store because of a higher rate of usage. Formal inspections were also conducted three or four times a year. Major repair work was generally done in spring or just before winter by Fillar Construction Company. The specific hole in which Mrs. Kubiszak fell was not recalled by Mr. Spitalieri.

---

2. The videotaped deposition was played to the jury.

## II

Appellant contends in its first assignment of error that:

"The trial court erred in admitting, over appellant's objection, an undated photograph alleged to depict the defect in question, but not properly identified as such."

The trial court admitted into evidence a photograph[3] alleged to depict the parking lot and hole in question. Appellant asserts that no witness testified that the photograph depicted the defect as it existed on April 29, 1986, and no witness disclosed that the photograph was taken over one month after the accident. Appellant, therefore, argues that the trial court erred in admitting the clearly prejudicial photograph into evidence.

The record reveals the following exchange between Mrs. Kubiszak and her counsel concerning the photograph:

"Q. Mrs. Kubiszsak, I'm handing you what's been marked as Plaintiff's Exhibit Number 1. Can you identify that for the jury?

"A. This is the hole I fell into.

" * * *

"Q. This is Plaintiff's Exhibit 15. Is this just to identify that?

"A. Yes, that is the same.

"MR. SMITH (defense counsel): Judge, it's already been published to the jury. I think we are—

"THE COURT: We will have the admissibility later. I said at side-bar you can have her identify it."

Plaintiff's Exhibit Number 1 was thereafter shown to Mr. Kubiszak:

"Q. Okay. Sir, I'm handing you what's been marked as Plaintiff's Exhibit 1. Can you identify that for the jury, please?

"MR. SMITH: Objection.

"THE COURT: Objection is noted.

"Q. Go ahead.

"A. That is the picture that I took of the hole that she fell into.

"Q. This picture was taken by you?

"A. Yes.

"Q. Are you certain, sir, that this is the hole that your wife fell into?

---

3. Plaintiff's Exhibit Number 1 is a photograph of the hole and Plaintiff's Exhibit Number 15 is an enlargement of that photograph. Exhibit Number 15 was admitted into evidence but not Exhibit Number 1.

"MR. SMITH: Objection.

"A. Yes.

"THE COURT: Overruled."

Later when the trial court ruled on the admissibility of the plaintiff's exhibits, the following colloquy took place between defense counsel and the trial court:

"THE COURT: I don't know. We have to do the exhibits.

"Number one is received. Two is received. Three is a picture of her ankle after the surgery.

"MR. SMITH: No objection.

"THE COURT: Received.

" * * *

"MR. SMITH: I have the same objection to 15 as I do to Number 1.

"THE COURT: You can pick 1 or 2 not both of them.

"MR. SMITH: Can the jury be instructed—I'm not sure it's a matter of evidence when that picture was taken.

"THE COURT: Yes, sir, she testified. You can argue it if you want."

Appellee asserts that this court lacks the power to review the assigned error because appellant waived it by failing to object to the introduction of the photograph into evidence. Defense counsel stated "No objection" to the receipt of Exhibit Number 1. Defense counsel then objected to the receipt of Exhibit Number 15. Appellee argues that since appellant did not object to Exhibit Number 1, its objection to Exhibit Number 15 is "No objection." Appellee is correct in stating that appellant waives its right to assign as error the admissibility of evidence, if, after objecting to the exhibit when marked, it fails to object at the moment of its admission. See *Heldman v. Uniroyal, Inc.* (1977), 53 Ohio App.2d 21, 7 O.O.3d 20, 371 N.E.2d 557. However, we cannot ignore defense counsel's attempt to object to the admissibility of these photographs. Furthermore, we cannot, in all good conscience, interpret appellant's statement, "I have the same objection to 15 as I do to Number 1," as meaning, "No objection," as suggested by appellee. Under the facts of this case, it is clear that defense counsel objected to the introduction of these photographs. We, therefore, find no waiver. This conclusion is enhanced due to the trial court's failure to respond to defense counsel's subsequent objection. The trial court still had the opportunity to avoid or correct an error, if there was one, which is the purpose of the contemporaneous objection rule. See *LeFort v. Century–21 Maitland Realty Co.* (1987), 32 Ohio St.3d 121, 123, 512 N.E.2d 640, 642.

■ The issue thus remains whether the trial court erred in admitting Exhibit Number 15. A photograph is not objectionable if it is properly identified, is relevant and competent, and is an accurate representation of the scene which it portrays. A proper foundation is required in which there must be testimony that the photograph is a fair and accurate representation of that which it represents. See *Heldman v. Uniroyal, Inc., supra,* 53 Ohio App.2d at 25, 7 O.O.3d at 22, 371 N.E.2d at 561, citing *State v. Hill* (1967), 12 Ohio St.2d 88, 90, 41 O.O.2d 369, 371, 232 N.E.2d 394, 396; *Cincinnati, Hamilton & Dayton Ry. Co. v. De Onzo* (1912), 87 Ohio St. 109, 100 N.E. 320; *Ohio Power Co. v. Diller* (1969), 18 Ohio App.2d 167, 47 O.O.2d 292, 247 N.E.2d 774; *DeTunno v. Shull* (1956), 75 Ohio Law Abs. 602. A photograph of an accident scene may be used to aid and assist the jury in understanding the testimony of a witness. *Bailey v. Greeley Gen. Warehouse Co.* (1948), 52 Ohio Law Abs. 469, 83 N.E.2d 244. The acceptance of photographic evidence rests within the sound discretion of the trial court. *Id.*

■ Both the appellee and the trial court herein erred in finding testimony referring to the date of the taking of the photograph. No witness testified as to when the photograph was taken by Mr. Kubiszak. The only reference to this date was during plaintiff's closing argument:

" * * * As Mrs. Kubiszak testified, this picture was taken approximately a month and a half after the accident."

The record is devoid of this testimony on behalf of Mrs. Kubiszak or any other witness. This lack of testimony, however, does not lead to the conclusion that the trial court abused its discretion in admitting the photograph.

Contrary to appellant's assertion that there was no testimony about the photograph depicting the hole in question, both Mr. and Mrs. Kubiszak identified the hole from the photograph as the one in which Mrs. Kubiszak fell on April 29, 1986. The failure to identify the date on which the photograph was taken does not blemish the trial court's ruling since the Kubiszaks identified the hole in the photograph as depicting the hole as it existed on April 29, 1986.

Appellant's first assignment of error is accordingly overruled.

### III

In its second assignment of error, appellant contends that:

"The trial court erred in overruling appellant's motions for directed verdict."

Appellant asserts that a plaintiff, in order to prove negligence on the part of a property owner, must prove that the owner had notice of the alleged defect.

Here, there is no evidence that appellant had actual notice of the hole. Appellant argues that appellee then failed to prove the required constructive notice by offering evidence as to the length of time of the hazard's existence. There is no dispute that Mrs. Kubiszak fell into a hole in the appellant's parking lot. The dispute centers on the appellant's knowledge about the hole's existence. Appellant relies on the theory that the hole was not a gradual wearing away of the parking lot but was an instantaneously created depression at the juncture of concrete slabs.

■ A motion for directed verdict which is based upon the evidence presented is governed by Civ.R. 50(A), which provides as follows:

"(4) *When Granted on the Evidence.* When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

See, also, *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 220, 58 O.O.2d 424, 427, 280 N.E.2d 896, 899. Pursuant to this rule, a trial court must direct a verdict in favor of the defendant where there is no evidence tending to prove an essential element of the plaintiff's cause of action. *Rayburn v. J.C. Penney Outlet Store* (1982), 3 Ohio App.3d 463, 465, 3 OBR 544, 546, 445 N.E.2d 1167, 1169; *Epling v. Express Co.* (1977), 55 Ohio App.2d 59, 61, 9 O.O.3d 220, 221, 379 N.E.2d 239, 241.

A business invitee is one who is upon the premises of another by invitation, express or implied, for some purpose that is beneficial to the owner. *Sweet v. Clare–Mar Camp, Inc.* (1987), 38 Ohio App.3d 6, 526 N.E.2d 74, paragraph two of the syllabus. There is no dispute that Mrs. Kubiszak was an invitee when she traveled to Rini's to do her grocery shopping.

■ Appellant owed the following duty to Mrs. Kubiszak as an invitee. The owner of the premises must exercise reasonable or ordinary care for the invitee's safety and protection. Included in this duty is the duty to maintain the premises in a reasonably safe condition and to warn the invitee of latent or concealed defects of which the possessor has or should have knowledge. *Scheibel v. Lipton* (1951), 156 Ohio St. 308, 46 O.O. 177, 102 N.E.2d 453. However, the owner is not to be held as an insurer against all forms of risk. *S.S. Kresge v. Fader* (1927), 116 Ohio St. 718, 158 N.E. 174.

In order for Mrs. Kubiszak, a customer of a supermarket, to recover damages for personal injuries sustained in coming in contact with a hole in the

parking lot maintained by appellant for use by its customers and about which hole the customer has not been warned, Mrs. Kubiszak has the burden of proving:

"1. That the nature, size, extent and location of such [hole] involved a potential hazard to customers, sufficient to justify a reasonable conclusion that the duty of ordinary care, which the operator of such [business] owes to his customers, would require such operator to prevent or remove such [hole] or to warn his customer about it, and

"2. (a) That such sufficient potential hazard was created by some negligent act of the operator of the [business] or his employees, or

"(b) That such operator or his employees had, or should in the exercise of ordinary care have had, notice of that potential hazard for a sufficient time to enable them in the exercise of ordinary care to remove it or to warn customer about it." *Anaple v. Standard Oil Co.* (1955), 162 Ohio St. 537, 55 O.O. 424, 124 N.E.2d 128, paragraph one of the syllabus.

The standard for determining sufficient time to enable the exercise of ordinary care requires evidence as to the hazard's length of existence. See *Anaple, supra.* This court has consistently followed *Anaple,* holding that evidence of how long the hazard existed is mandatory in establishing a duty to exercise reasonable care. *E.g., Powers v. First Natl. Supermarkets* (June 13, 1991), Cuyahoga App. No. 61005, unreported, 1991 WL 106060; *Greene v. Fisher Foods* (Nov. 22, 1989), Cuyahoga App. No. 55886, unreported, 1989 WL 142849. The totality of the circumstances must indicate that a hazard existed for that period of time for which the owner or operator of the business could exercise ordinary care. *Wright v. K–Mart* (Mar. 12, 1987), Cuyahoga App. No. 51709, unreported, 1987 WL 7875.

In the within action, the jury was presented a photograph of a hole in the appellant's parking lot. Although the photograph was taken a month and one-half after the incident, the Kubiszaks identified the hole as the one in which Mrs. Kubiszak fell on April 29, 1986. The jury was free to conclude that the hole depicted in the photograph was not of the type to miraculously appear in the concrete. The jury was also free to conclude that the hole existed at the time the parking lot was inspected by appellant's employer. The prerogative of the jury to find that under the totality of the circumstances, the hazard existed for that period of time for which the appellant could exercise ordinary care will not be disturbed on appeal.

Based upon the evidence presented by Mrs. Kubiszak, the trial court did not err in denying appellant's motion for directed verdict.

## IV

Appellant, in its third assignment of error, asserts that:

"The trial court erred in overruling appellant's objections to plaintiffs' attorney's improper closing arguments, and allowing plaintiffs' counsel to repeatedly engage in improper closing argument."

Appellant argues that appellee's counsel's closing argument was improper and prejudicial in four respects, thus resulting in an unreasonable jury award. Appellant contends that counsel argued facts not in evidence, that counsel repeatedly invoked the "Golden Rule" argument, that counsel argued for punitive damages, and that counsel argued for attorney fees.

■ Trial counsel is generally accorded considerable latitude in closing arguments. *Durst v. Van Gundy* (1982), 8 Ohio App.3d 72, 8 OBR 103, 455 N.E.2d 1319. The trial court's control over the latitude allowed is discretionary. The action of the trial court will not be disturbed absent an abuse of discretion. *Hitson v. Cleveland* (Dec. 13, 1990), Cuyahoga App. No. 57741, unreported, 1990 WL 204337; *Waddell v. Fisher Foods, Inc.* (Apr. 4, 1985), Cuyahoga App. No. 48895, unreported, 1985 WL 7939. Only if the circumstances are of such a reprehensible and heinous nature as to constitute prejudice, will this court reverse a judgment. *Hitson, supra; Plavcan v. Longo* (July 3, 1980), Cuyahoga App. No. 39964, unreported.

## A

Appellant focuses on the following statements made by appellee's trial counsel in asserting that he argued facts not in evidence.

"As Mrs. Kubiszak testified, this picture was taken approximately a month and a half after the accident.

"You also heard testimony that this hole looked about or almost exactly the same as it did at the time of the accident.

" * * *

"Mrs. Kubiszak told you this hole looked exactly like the hole like it was a month and [a] half before the accident. She told you that."

It is true, as stated earlier in this opinion, that no witness testified to the date on which the photograph was taken of the hole. Appellant is partially correct in the assigning of impropriety on behalf of trial counsel. However, both Mr. and Mrs. Kubiszak testified that the hole in the photograph depicted the hole as it existed on April 29, 1986.

■ Although appellant argues that trial counsel's reference to the date on which the photograph was taken was improper, appellant did not object to the

statement when made by trial counsel in his closing argument. Such a failure to object waives one's right to reversal of the judgment unless there is "gross and persistent abuse of privilege by counsel." *Eastin v. Eastin–Rossi* (Dec. 1, 1988), Cuyahoga App. No. 54660, unreported, 1988 WL 128231; *Norwood v. Forest Converting Co.* (1984), 16 Ohio App.3d 411, 16 OBR 481, 476 N.E.2d 695, paragraph eight of the syllabus. A review of the record fails to reveal a gross and persistent abuse of privilege on behalf of trial counsel when he spoke of the date of the photograph.

### B

Appellant next asserts that trial counsel improperly argued when he asked the jurors what they would wish to recover if they were Mrs. Kubiszak. Trial counsel purportedly wrongly employed the Golden Rule argument when he asked the jury to put themselves in the place of Mrs. Kubiszak.

Trial counsel addressed the jury as follows:

"What I ask you again is, what is it worth to never have your ankle the same? What would you pay to have your original ankle back, to do the things that you could do before an accident? What would you pay—

" * * *

"What would you pay to not be able to get up and wear high tops every day or be able to wear all high heels when you wanted to?

" * * *

"What would you pay, ladies and gentlemen, to be able to walk on uneven ground with your husband, to go hiking up to the cabin or do anything, bowling, to do the things that your liked to do before this accident? What would you pay a day for that?"

Appellant also asserts that the jury's award was improperly influenced by trial counsel's identification of appellant as a "multi-million dollar company," and his urging to "send these people a message."

Finally, appellant avers that the jury's award was influenced by trial counsel's statement:

"I also want you to consider, ladies and gentlemen, that lawsuits are expensive. It costs money to put doctors on video. * * * [Appellant's objection sustained]."

It is argued that this statement incited the jury to award damages above and beyond an amount of compensation to Mrs. Kubiszak by awarding, in essence, attorney fees and expenses.

The jury awarded Mrs. Kubiszak the amount of $42,900, less fifteen percent for comparative negligence. Appellant claims that this amount is unreasonable, being that it compensates Mrs. Kubiszak for a "sprained ankle." Appellant cites the cumulative effect of trial counsel's closing argument as the cause of this unreasonable award.

 Trial counsel improperly argues in closing argument when he appeals to the jury to abandon the position of impartiality. Such arguments are generally found in cases dealing with fact situations charged with heavy emotion and serious personal injury cases. See *Davis v. Raymond* (Dec. 11, 1984), Mahoning App. No. 83 C.A. 56, unreported, 1984 WL 3800; *Schumacher v. Blackburn* (May 2, 1988), Knox App. No. 87 C.A. 32, 1988 WL 48579. If trial counsel employs improper arguments, the verdict would illustrate the impropriety by being excessive. *Hall v. Burkert* (1962), 117 Ohio App. 527, 530, 24 O.O.2d 322, 324, 193 N.E.2d 167, 169.

 Mrs. Kubiszak sustained an injury which required multiple casts, continuous pain and physical therapy, surgery, and permanent inability to fully flex her ankle. Mrs. Kubiszak fell in the hole in appellant's parking lot on April 26, 1986 and the physical consequences of the "sprained ankle" continued thereafter. This evidence supports the jury's award of compensation. The record fails to reveal that trial counsel's arguably improper statements were so reprehensible and heinous as to constitute prejudice.

Appellant's third assignment of error is overruled.

*Judgment affirmed.*

ANN MCMANAMON, P.J., and STILLMAN, J., concur.

SAUL G. STILLMAN, J., retired, of the Eighth Appellate District, sitting by assignment.