DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas which, following a jury trial, found appellant, Sherman Preston, guilty of aggravated murder in violation of R.C. 2903.01(A) and sentenced him to a term of twenty years to life. For the reasons stated herein, this court affirms, in part, and reverses, in part, the judgment of the trial court.
Appellant sets forth the following five assignments of error:
 "First Assignment of Error "THE TRIAL COURT COMMITTED ERROR BY ENGAGING IN EX PARTE COMMUNICATION WITH THE JURY.
 "Second Assignment of Error "THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING THE STATE OF OHIO'S MOTION TO PRECLUDE EVIDENCE THAT DENISE HOWELL WAS A DRUG USER AND THAT HER AUTOPSY REVEALED A LUNG CONDITION MOST OFTEN SEEN IN DRUG ADDICTS.
 "Third Assignment of Error "PROSECUTORIAL MISCONDUCT DURING CLOSING ARGUMENT DEPRIVED MR. PRESTON OF A FAIR TRIAL.
 "Fourth Assignment of Error "DEFENSE COUNSEL'S FAILURE TO OBJECT TO THE MISCONDUCT SET FORTH IN THE THIRD ASSIGNMENT OF ERROR AMOUNTED TO INEFFECTIVE ASSISTANCE OF COUNSEL.
 "Fifth Assignment of Error "THE TRIAL COURT COMMITTED PLAIN ERROR IN SENTENCING MR. PRESTON TO PAY APPOINTED COUNSEL COSTS WITHOUT MAKING A FINDING THAT HE WAS, OR WOULD LIKELY BECOME, ABLE TO DO SO."
The following facts are relevant to this appeal. On July 9, 1999, a Lucas County grand jury returned a two count indictment against appellant. Appellant was charged with two counts of aggravated murder, one in violation of R.C. 2903.01(B) and another in violation of R.C.2903.01(A), in regard to a murder that occurred in March 1983. Appellant entered not guilty pleas as to both counts and the case proceeded to trial.
At trial, Anthony Coates, the victim's nephew who lived with her at the time of her death, testified. He testified that the evening before she was found strangled he was with his aunt when a man drove the victim and Coates to the store. Coates testified that later that same evening he saw his aunt leave the house with the same man. Less than a month later, Coates identified appellant from a photo array as the man. Coates described the car appellant drove as a green 1973 Chevrolet hard top with rust all over and "beat up." Coates testified that an orange work helmet was in the back of the car and described the interior of the car as ripped up.
The Toledo police detective in charge of the investigation, now retired, testified that the victim was discovered on the morning of March 19, 1983, in the rear yard of a vacant duplex, partially nude and partially covered by a piece of plywood. The victim was positioned on her back on a small sidewalk that led from the rear porch of the duplex to the alley. The ground around the victim was muddy and the detective testified that he saw footprints around the body. The detective also testified that he found the same common footprint on the front and rear steps and the landing inside the duplex. The detective described the footprint as having round nubs with a thread-like design. The detective also testified that he found a pair of blue jeans and an identification card bearing the victim's picture in one room and a pair of women's panties in another room of the upstairs duplex apartment. The victim's picture identification card bore the same footprint observed around the body. The victim's coat was found on the porch of the adjacent duplex. The victim's hat was found adjacent to the victim on the ground. The police never found the victim's shoes or her purse. No fingerprints were found in the duplex.
In April 1983, the police received a Crime Stopper tip that appellant was involved in this homicide. The detective testified that he took a photo array to the victim's nephew and, in just a few seconds, he identified appellant as the man with whom he saw his aunt leave. Appellant was interviewed, shown a picture of the victim and denied knowing her. The detective testified that he noticed that the soles of appellant's tennis shoes appeared to resemble the pattern observed at the crime scene. The detective testified that he told appellant this and asked appellant for the tennis shoes; appellant was given a brand new pair of tennis shoes in exchange for his. Appellant's shoes were submitted to both the Toledo police crime lab and the F.B.I. in Washington for comparison to the victim's picture identification card, pictures of the footprints from the ground surrounding the victim and a piece of rubber runner from the stairs in the duplex.
The detective also testified that although appellant told the detective he did not own a car, appellant advised the detective that appellant drove his girlfriend's car, a 1973 green Chevrolet. Coates identified this car as the vehicle he had seen on March 18, 1983.
A former F.B.I. footwear examiner, now retired, testified in regard to his testing of the victim's picture identification card, pictures of the footprints from the ground surrounding the victim and a piece of rubber runner from the stairs in the duplex. This witness explained the process involved in footwear examination. He testified that although the impression on the victim's photo identification card corresponded with the design and the physical size and shape of that design and the general condition of appellant's right shoe, because there were no cuts or scratches or unique features visible in the footprint impressions, he was unable to positively identify appellant's shoe as having made the photo identification card impression. This witness also testified that it was his opinion that appellant's shoes could have made the photo identification card impression. This witness also testified that the impression on the rubber runner was distorted and he could not make any association specifically with appellant's shoes. In regard to the pictures of the footprints from the ground surrounding the victim, this witness testified that the detail in the impression was not sufficient to make a definitive comparison. This witness testified that when a shoe is mass produced, the distance between the nubs will differ from shoe size to shoe size. He also testified that only eight to nine percent of the total footwear sold would be a size twelve, appellant's shoe size.
A criminologist at the Toledo Police Department forensic laboratory testified he conducted an examination and concluded that appellant's shoe could have made the impression found on the victim's photo identification card. The criminologist also extracted a blood specimen and buccal swabs from appellant for DNA evaluation in 1999.
The testimony of the deputy coroner who performed the autopsy was that the victim died from strangulation from two tube socks tied as a ligature, each tied very tightly around the victim's neck; one sock was knotted in the back and one was knotted on the left side. The victim had scratch marks on her neck, most likely finger nail marks, very likely caused by the victim trying to defend herself and pull off the socks. The deputy coroner's testimony was that the victim would have lost consciousness first and died in ten minutes. The victim had indentations in her neck, caused by the two tube socks. The victim also had abrasions on her face and dirt smears due to contact with the ground which could have occurred because of being dragged. There were no external injuries to the victim's vagina and rectum. Thus, although the coroner testified that sperm were found in both the victim's vagina and rectum, from the autopsy, the coroner could not conclude whether there had been consensual or non-consensual sex.
The laboratory supervisor of the DNA profiling laboratory that conducted the DNA analysis in the case sub judice testified that appellant's blood matched the biological material received from the rectal swab obtained at the time of autopsy. The match was on all ten different markers. The laboratory supervisor testified that if one marker does not match, it is automatically an exclusion.
The medical director of the DNA profiling laboratory that conducted the DNA analysis in the case sub judice also testified. He testified that the significance of the match in the case sub judice, the frequency in the African-American population, would be one in a hundred twenty billion. Thus, based upon the statistical numbers, the medical director opined that appellant was the person who contributed the sperm DNA on the rectal swab.
On February 22, 2000, the jury returned a guilty verdict as to the violation of R.C. 2903.01(A) and a not guilty verdict as to the violation of R.C. 2903.01(B). The sentencing judgment entry ordered appellant to pay any costs of prosecution, including any fees associated with the appointment of counsel. Following sentencing, appellant filed a timely notice of appeal.
In his first assignment of error, appellant argues that the trial court committed error by engaging in ex parte communication with the jury.[1]
This court finds no merit in this assignment of error.
In State v. Hill (1995), 73 Ohio St.3d 433, 444, the Ohio Supreme Court stated:
 "* * * a trial court's ex parte communication with the jury is not necessarily prejudicial error. (Citation omitted.) To establish prejudice from such ex parte
communications, `the complaining party must first produce some evidence that a private contact, without full knowledge of the parties, occurred between the judge and jurors which involved substantive matters. (Citation omitted.) (Emphasis added.)"
See, also, Rushen v. Spain (1983), 464 U.S. 114 (Unrecorded ex parte
communication between a trial judge and a juror can be harmless error.)
In State v. Murphy (1992), 65 Ohio St.3d 554, 575, the Ohio Supreme Court stated: "The presumption of prejudice to which Remmer [Remmer v.United States (1954), 347 U.S. 227, 229] * * * refers obtains only where communication with the juror concerns `the matter pending before the jury.'" In Sweet v. Clare-Mar Camp, Inc. (1987), 38 Ohio App.3d 6, 9, the court, citing Rushen v. Spain (1983), 464 U.S. 114, noted that in very limited circumstances, reviewing courts have found a trial court's exparte communications on peripheral matters with a jury to be harmless. InClare-Mar Camp, because the court's communication related to the substance of the jury charge, the appellate court found the trial court had erred. Id.
Appellant cites Bostic v. Connor (1988), 37 Ohio St.3d 144, 149, andState v. White (1989), 65 Ohio App.3d 564, 570, in support of this assignment of error. These cases, however, both involved instances in which the trial judge communicated with the jury in regard to "substantive matters" and during jury deliberations. Specifically, in both cases, the trial judge communicated with the jury in regard to jury instructions, during jury deliberations. In Bostic,37 Ohio St.3d at 149-150, the communication was found to be harmless error, because the communication consisted of the bailiff informing the jury that their request for a written copy of the jury instructions was denied. InWhite, 65 Ohio App.3d at 570, the trial judge re-read jury instructions and responded to a factual question. The appellate court stated:
 "* * * the judge's communications to the jury not only involved instructions on the applicable law, but also involved factual questions which related to dates in the indictment and evidence presented at trial. The trial judge erred to the prejudice of appellant in not calling in counsel prior to his communication with the jury. (Citation omitted.) Once the jury deliberation commences, a trial judge courts real danger in conversing with the jury outside the presence of counsel for the parties. * * *" Id. at 570-571.
Upon review of the record in this case and the above law, this court does not find that the trial court committed reversible error. The communication of which appellant complains was a general welcome to prospective jurors appearing for jury service and was not communication in regard to "substantive matters."
Accordingly, appellant's first assignment of error is found not well-taken.
In his second assignment of error, appellant argues that the trial court abused its discretion in granting the state's motion in limine. Specifically, appellant argues that the trial court erred in precluding evidence that the victim's autopsy revealed the presence of "foreign body giant cells," a lung condition associated most of the time with drug addicts. The trial court excluded this evidence finding that it was more likely to be seen as character evidence and unfairly prejudice the state. This court finds no merit in this assignment of error.
The admission or exclusion of evidence is generally left to the discretion of the trial court. State v. Maurer (1984), 15 Ohio St.3d 239,264. All relevant evidence is admissible if its probative value outweighs the danger of unfair prejudice. State v. Williams (1983), 4 Ohio St.3d 53,58. See also Evid.R. 403. When a party challenges a ruling on the admission or exclusion of evidence by a trial court, an appellate court will not reverse the trial court's ruling unless the trial court abused its discretion. O'Brien v. Angley (1980), 63 Ohio St.2d 159, 163. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. (Citations omitted).
After thoroughly reviewing the relevant portions of the trial transcript, this court finds without merit appellant's argument that the trial court erred in excluding the evidence of the "foreign body giant cells." We find no abuse of discretion. Accordingly, appellant's second assignment of error is found not well-taken.
In his third assignment of error, appellant argues that prosecutorial misconduct during closing argument denied him a fair trial. Specifically, appellant claims that the prosecutor stated things which either were not true or were unsupported by the evidence; that the prosecutor attempted to inflame the passions of the jury by his speculations about the evidence; and that the prosecutor attempted to derive prior calculation and design from evidence which either did not exist or which did not demonstrate, even by inference, prior calculation and design. This court finds no merit in this assignment of error.
Because appellant did not object to any of the complained instances of prosecutorial misconduct, this court reviews this assignment of error for plain error, Crim.R. 52(B). "[N]otice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Landrum (1990),53 Ohio St.3d 107, 111.
The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. State v. Lott (1990),51 Ohio St.3d 160, 165; State v. Smith (1984), 14 Ohio St.3d 13, 14. In making this determination, an appellate court should consider several factors: (1) the nature of the remarks; (2) whether an objection was made by counsel; (3) whether corrective instructions were given by the court; and (4) the strength of the evidence against the defendant. State v.Braxton (1995), 102 Ohio App.3d 28, 41. An appellate court should also consider whether the misconduct was an isolated incident in an otherwise properly-tried case. State v. Keenan (1993), 66 Ohio St.3d 402, 410. Misconduct of a prosecutor at trial will not be considered grounds for reversal unless the conduct deprives the defendant of a fair trial. Statev. Maurer (1984), 15 Ohio St.3d 239, 266. The touchstone of analysis "* * * is the fairness of the trial, not the culpability of the prosecutor * * *." State v. Underwood (1991), 73 Ohio App.3d 834, 840-41, citing Smithv. Phillips (1982), 455 U.S. 209, 219.
A prosecutor is afforded wide latitude in closing arguments. State v.Jacks (1989), 63 Ohio App.3d 200, 210. In regard to the prosecutor's closing argument, in Pang v. Minch (1990), 53 Ohio St.3d 186, 194-95, the Ohio Supreme Court stated:
 "* * * It is axiomatic that great latitude is afforded counsel in the presentation of closing argument to the jury. (Citations omitted.) Included within the bounds of permissible argument are references to the uncontradicted nature of the evidence presented by the advocate. (Citations omitted.) The assessment of whether these bounds have been exceeded is, in the first instance, a discretionary function to be performed by the trial court. (Citations omitted.) Such determination will not be reversed on appeal absent an abuse of discretion. (Citation omitted.)
"* * *
 "* * * Moreover, the jury was instructed that the opening and closing statements of counsel are not evidence and should not be considered as such. * * *
 "A presumption always exists that the jury has followed the instructions given to it by the trial court. (Citations omitted.) * * *"
This court has thoroughly examined each alleged instance of improper argument in light of the entire case, Maurer, supra, and believe, beyond a reasonable doubt, that the jury would have found appellant guilty absent the prosecutor's remarks. Therefore, this court finds appellant's argument in regard to the prosecutor's closing argument to be without merit.
Accordingly, appellant's third assignment of error is found not well-taken.
In his fourth assignment of error, appellant argues that his trial counsel's failure to object to the prosecutor's alleged misconduct set forth in the third assignment of error amounted to ineffective assistance of counsel. This court finds no merit in this assignment of error.
The standard for determining whether a trial attorney was ineffective requires appellant to show: (1) that the trial attorney made errors so egregious that the trial attorney was not functioning as the "counsel" guaranteed appellant under the Sixth Amendment, and (2) that the deficient performance prejudiced appellant's defense. Strickland v.Washington (1984), 466 U.S. 668, 686-687. In essence, appellant must show that his trial, due to his attorney's ineffectiveness, was so demonstrably unfair that there is a reasonable probability that the result would have been different absent his attorney's deficient performance. Id. at 693.
Furthermore, a court must be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" in reviewing a claim of ineffective assistance of counsel. Id. at 689. A properly licensed attorney in Ohio is presumed to execute his duties in an ethical and competent manner.State v. Hamblin (1988), 37 Ohio St.3d 153, 155-56. Thus, appellant bears the burden of proving that his trial counsel was ineffective. Id. at 156; State v. Martens (1993), 90 Ohio App.3d 338, 351.
Effective assistance of counsel does not guarantee results. State v.Longo (1982), 4 Ohio App.3d 136. "A failure to prevail at trial does not grant an appellant license to appeal the professional judgment and tactics of his trial attorney." State v. Hart (1988), 57 Ohio App.3d 4,10.
This court has reviewed the performance of appellant's trial counsel in light of the errors of practice he asserted. Having found in the third assignment of error that no prosecutorial misconduct occurred, this court cannot say that appellant's trial counsel was ineffective in failing to object to the alleged prosecutorial misconduct. This court concludes, on the state of this record, appellant has failed to demonstrate that his trial attorney's conduct at trial was either ineffective or prejudicial.
Accordingly, appellant's fourth assignment of error is found not well-taken.
In his fifth assignment of error, appellant argues that the trial court committed plain error in ordering him to pay appointed counsel costs without first making a finding that he was, or would likely become, able to do so as required by R.C. 2941.51(D).[2] This court finds merit in this assignment of error.
Upon a review of the record, we find that the trial court failed to make the necessary findings, as required by R.C. 2941.51(D). Accordingly, appellant's fifth assignment of error is found well-taken on the basis of State v. Brown (Nov. 19, 1999), Lucas App. No. L-97-1332, unreported.
On consideration whereof, the decision of the Lucas Court of Common Pleas is affirmed, in part, and reversed, in part. The decision of that court is reversed as to the order to pay court-appointed counsel fees; all other portions of the decision are affirmed. This case is remanded to the trial court for further proceedings consistent with this decision. Court costs of this appeal are assessed to appellant.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J., Richard W. Knepper, J., George M. Glasser, J.
CONCUR.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.
[1] Specifically, appellant alleges that the following underlined comments reference improper ex parte communication:
 "THE COURT: Good morning, ladies and gentlemen. As I indicated earlier this morning, my name is Jim Jensen. I'm one of the Judges in the Lucas County Court of Common Pleas. You have been called to this courtroom as prospective jurors in a criminal matter.
 "As I indicated to you, it's the Court's intentions here that your service as jurors or prospective jurors be as rewarding an experience as possible. We know that your service does represent some inconvenience to you. We also believe that it is also one of the most important civic responsibilities you have, as well as a legal obligation.
 "We're going to go through the process of voir dire. I explained that to you downstairs. That's the process whereby I will ask you questions, and then counsel for the parties will ask you questions. * * *"
[2] R.C. 2941.51(D) provides, in part:
 "The fees and expenses * * * shall not be taxed as part of the costs and shall be paid by the county. However, if the person represented has, or reasonably may be expected to have, the means to meet some part of the cost of the services rendered to the person, the person shall pay the county an amount that the person reasonably can be expected to pay. * * *"