{¶ 1} Jeremiah Lyons ("appellant") appeals the judgment of conviction by the Ashtabula County Common Pleas Court. The trial court's judgment was entered upon a jury's verdict finding appellant guilty on three counts of Aggravated Vehicular Assault, with alcohol specifications, in violation of R.C. 2903.08(A). Additionally, appellant had his driver's license permanently revoked pursuant to former R.C.2903.08. For the following reasons, we affirm the decision of the trial court in this matter.
 {¶ 2} The following facts were presented at trial. On or about October 8, 1999, appellant and several of his friends visited a number of local drinking establishments in the vicinity of Ashtabula, Ohio. The record indicates that appellant and his friends visited at least four such establishments within the span of approximately one hour. At each and every stop, appellant was observed to consume at least one beer, sometimes two, not to mention at least "one shot" of another unknown libation. Following this night of "bar hopping", appellant and his friends decided to visit at least one more establishment before calling it a night.
 {¶ 3} The record indicates that appellant was indeed driving his Cadillac with one friend in the passenger's seat and another located in the back seat. One of appellant's passengers testified that while driving on Austinburg Road, he observed appellant "speeding" and "going left of center a couple times." The passenger also testified that he told appellant "you can't be speeding because the state boys will get you." In spite of his friend's warnings, appellant continued to proceed to the next establishment.
 {¶ 4} As appellant continued down Austinburg Road, he came over the grade of a hill. Once over the grade, appellant's friend noticed that just up the road, several people were involved in pushing a van that had just run out of gas to safety. Appellant's friend warned him to "watch out for them people pushing the van." Appellant failed to swerve out of the way and hit the left end of the van, striking three individuals who were pushing the vehicle. As a result of appellant's actions, one of the victims had both of his legs completely severed from his body upon impact, the second victim required a skin graft to his head and thirteen pins placed in his leg, and the third victim escaped with lacerations, scars, and road rash.
 {¶ 5} Following the accident, the Ohio State Highway Patrol arrived on the scene. Upon interviewing appellant, Trooper Clayman "noticed a strong odor of alcoholic beverage on his breath." Trooper Clayman also noted that appellant was dazed, confused, and slurred his words. The officer then gave appellant a Horizontal Gaze Nystagmus Test. Appellant failed all six elements of the HGN test. Appellant was then taken to Ashtabula Medical Center. While at the hospital, Trooper Clayman read appellant his Miranda Rights and had appellant sign the acknowledgement of those rights. A subsequent blood sample revealed that two and one half hours after the crash, appellant's BAC was .122. Trooper Clayman testified that he then cited appellant for Driving Under the Influence of Alcohol, in violation of R.C. 4511.19 and failure to provide Assured Clear Distance, in violation of R.C. 4511.21(A).
 {¶ 6} Appellant was subsequently bound over and indicted by the Ashtabula County Grand Jury on March 8, 2000. On March 14, 2000, appellant entered a plea of not guilty to each of the three counts of Aggravated Vehicular Assault with alcohol specifications. Following a three-day jury trial, appellant was subsequently found guilty of all charges on May 2, 2001. On July 5, 2001, the trial court sentenced appellant to a total of eighteen months incarceration and ordered a permanent revocation of appellant's motor vehicle operating privileges. This timely appeal followed. Appellant asserts six assignments of error for our review:
 {¶ 7} "[1.] Appellant was denied the right to an impartial jury as guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, Section, Ten, Article I of the Ohio Constitution.
 {¶ 8} "[2.] The trial court abused it's [sic] discretion, effectively denying Appellant the right to counsel, when it prohibited Appellant's trial counsel from arguing that the alleged victims in this case were responsible for their own injuries.
 {¶ 9} "[3.] Appellant was denied a fair trial by reason of improper comments by the prosecuting attorney.
 {¶ 10} "[4.] Appellant was denied the effective assistance of trial counsel.
 {¶ 11} "[5.] The trial court erred in sentencing Appellant to consecutive terms of incarceration in violation of R.C. 2941.25.
 {¶ 12} "[6.] Former R.C. 2903.08, requiring a mandatory permanent license revocation, violates R.C. 1.58(B)."
 {¶ 13} In his first assignment of error, appellant argues that two specific instances of juror misconduct in this case warrant a reversal of his conviction. We disagree with appellant.
 {¶ 14} A trial court's decision regarding juror misconduct will not be overturned absent an abuse of discretion. State v. Hessler,90 Ohio St.3d 108, 2000-Ohio-30. An abuse of discretion connotes more than an error of law of judgment, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Adams (1980),62 Ohio St.2d 151, 157. In reviewing a trial court's examination of juror misconduct, this court must show deference to the trial judge, who sees and hears the events and thus is in a better position to accurately evaluate the situation and determine the appropriate scope of inquiry.Hessler, supra; State v. Rudge (1998), 89 Ohio App.3d 429, 442. Also, in reviewing a case involving alleged juror misconduct, a court must determine: (1) whether juror misconduct actually occurred; and (2) if misconduct is found, whether it materially prejudiced the defendant's substantial rights. State v. Taylor (1991), 73 Ohio App.3d 827, 831.
 {¶ 15} In this case, the record indicates that appellant failed to object to the trial court's handling of the alleged misconduct, nor did appellant motion the court for a mistrial based on the alleged misconduct. An appellate court need not consider an error that was not called to the attention of the trial court at a time when such error could have been avoided or corrected by the trial court. State v. Joseph
(1995), 73 Ohio St.3d 450, 455. As a result, such error is deemed waived absent plain error. Id. Plain error does not exist unless, but for the error, the outcome at trial would have been different. Id.
 {¶ 16} In the first instance, a male juror approached the bailiff before the second day of trial with a note. In that note, the juror indicated that he had lost a granddaughter to a drunk driver and that as a result, he could not be an impartial juror. Immediately upon receiving the note, the trial court voir dired the juror, admonished him for failing to report the story prior to the start of trial, and immediately excused the juror from service. Also, prior to dismissing the juror, the trial court asked if the juror had discussed the case or his granddaughter's death with anyone, to which the juror responded "No, sir."
 {¶ 17} The record indicates that the juror came forth on his own, did not communicate with anyone about the case or his granddaughter's death, and was dismissed by the trial court and replaced with an alternate juror. As a result, we conclude that the trial court did not commit plain error or abuse its discretion in the handling of the first allegation of juror misconduct.
 {¶ 18} In the second instance, a female juror was overheard by another juror referring to a discussion she had with her husband about appellant's defense counsel. The record indicates that the husband's comment consisted of "he's known for that." Immediately upon hearing the comment, the juror reported the husband's statement to the trial court, but upon voir dire, could not provide any other details as to the content of the discussion between the female juror and her husband. The trial court then voir dired the female juror, who repeatedly testified that she did not discuss the case with her husband, but did tell her husband that defense counsel's hair was sticking up in court.
 {¶ 19} The record indicates that the female juror did not discuss the case with anyone, showed no signs of bias or prejudice towards appellant or his counsel, and was admonished for even commenting about defense counsel's hair. After investigating both the reporting juror and the female juror in question, the trial court allowed the female juror to remain on the jury. Based on the record before us, we again conclude that the trial court did not commit plain error or abuse its discretion in addressing the allegations of juror misconduct. Appellant's first assignment of error is overruled.
 {¶ 20} In his second assignment of error, appellant argues that he was prejudiced when the trial court limited his defense counsel's remarks on the issue of contributory negligence in his opening statement. Specifically, appellant asserts that his defense counsel should have been permitted to discuss the victims' lack of car insurance, as well as the fact that the victims had the chance to pull the van over to a safer place when they ran out of gas, in his opening statement.
 {¶ 21} Appellant argues that counsel should be accorded latitude by the trial court in making his opening statement. Maggio v. Cleveland
(1949), 151 Ohio St. 136, 141. However, a trial court's control over the latitude allowed in an opening statement is discretionary. Kubiszak v.Rini's Supermarket (1991), 77 Ohio App.3d 679. Thus, a trial court's ruling with regards to an opening statement will not be overturned absent an abuse of discretion. Id.
 {¶ 22} The record indicates that the trial court stated that the issue of the victims' motor vehicle insurance was not "relevant to any issue I'm aware of in this case." The trial court also stated "Contributory negligence is not an issue in this case." We agree with the trial court.
 {¶ 23} Neither contributory negligence nor comparative negligence is applicable to a criminal trial for aggravated vehicular assault. Statev. Swayer (July 1, 1992), 9th Dist. No. 15431, 1992 Ohio App. LEXIS 3486, at *7. Appellant also fails to demonstrate how the issue of the victim's car insurance was in any way relevant to the issue of aggravated vehicular assault under R.C. 2903.08. Furthermore, the record indicates that appellant's defense counsel was subsequently allowed to present testimony regarding the victims' opportunity to pull over in a safer place as the trial progressed. Therefore, even if it were error for the trial court to limit the opening statement of appellant's defense counsel, which it was not, the fact that appellant was still able to present evidence on the issue renders any possible error harmless beyond a reasonable doubt pursuant to Crim.R. 52(A). State v. Brown (Aug. 21, 1998), 3rd Dist. No. 5-98-12, 1998 Ohio App. LEXIS 4306. As a result, we conclude that the trial court did not abuse its discretion in limiting the opening statement of appellant's defense counsel. Appellant's second assignment of error is without merit.
 {¶ 24} In his third assignment of error, appellant alleges that various comments made by appellee in its closing arguments were prejudicial and unduly influenced the jury's decision. Appellant also argues that appellee engaged in prosecutorial misconduct via an ex parte communication with the trial court prior to the sentencing hearing. We again disagree with appellant.
 {¶ 25} In most cases when prosecutorial misconduct is alleged, a reviewing court must determine whether the alleged statements were improper and, if so, whether those remarks deprived defendant of a fair trial. State v. Fears (1999), 86 Ohio St.3d 329. However, the record before us indicates that appellant failed to raise any objections to the prosecutors' comments at trial. As a result, allegations of prosecutorial misconduct that are not raised at trial are subject to waiver on appeal, absent plain error. State v. Greer (1988), 39 Ohio St.3d 236. An error rises to the level of plain error if, but for the error, the outcome of the trial clearly would have been different. State v. Underwood (1983),3 Ohio St.3d 12, 14.
 {¶ 26} Closing arguments must be viewed in their entirety to determine whether the disputed remarks were prejudicial. State v. Mann
(1993), 93 Ohio App.3d 301. "Isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." State v.Carter (2000), 89 Ohio St.3d 593, 603. An appellant is entitled to a new trial only when a prosecutor asks improper questions or makes improper remarks and those questions or remarks substantially prejudiced appellant. State v. Smith (1984), 14 Ohio St.3d 13. Finally, counsel is normally entitled to a certain degree of latitude in its concluding remarks. State v. Liberatore (1982), 69 Ohio St.2d 583.
 {¶ 27} Appellant argues that the prosecutors' comments were inflammatory and prejudicial. We do not agree. The record indicates that the alleged inappropriate comments made by the prosecutors were made in rebuttal to specific issues raised by appellant's defense counsel in his closing arguments. Furthermore, appellants argument that the prosecutors inflamed the jury by stating that appellant had "between 18 and 27 drinks" is based on a statement taken out of context. A review of the record indicates that immediately prior to that comment, the prosecutor was discussing an issue raised by appellant's own expert regarding "equivalent drink" ratios. We have carefully reviewed the transcript, including the closing argument given by the prosecutors assigned to this case. Having done so, we are unable to conclude that any statement or remark made by the prosecutor so tainted this proceeding that, but for the prosecutors' remarks, the outcome of the trial would have been different.
 {¶ 28} Appellant also alleges that an ex parte communication took place that may have influenced the trial court in its sentencing of appellant. Specifically, appellant alleges that the prosecutor's June 11, 2001 letter to the trial court somehow influenced the sentencing of appellant on July 5, 2001. Our review of the letter indicates that the prosecutor made no reference to the sentencing of appellant in the letter, nor did the prosecutor discuss the legal implications of the case. The prosecutor was attempting to make a general statement regarding the behavior of appellant's defense counsel. Furthermore, on September 10, 2001, the trial court issued a judgment entry stating that it did not consider the prosecutor's letter at the time it sentenced appellant. As a result, appellant has failed to show that any prejudice occurred as a result of the letter. State v. Gessner (Aug. 14, 1996), 7th Dist. No. 94 CA 225, 1996 Ohio App. LEXIS 3416.
 {¶ 29} Based on the above, appellant has failed to show that he was prejudiced by the prosecutors' actions. Further, even if the prosecutors' actions constituted error, appellant has failed to demonstrate that the outcome of his trial would have been different. Appellant's third assignment of error is overruled.
 {¶ 30} In his fourth assignment of error, appellant asserts that he was denied effective assistance of trial counsel. Specifically, appellant alleges five separate instances in an attempt to support his argument. Appellant claims that his trial counsel failed to object to the trial court's admission of photographs taken at the scene of the incident; failed to object to comments taken from one of the victim's medical reports; failed to object to "misstatements of the law" regarding "assured clear distance"; failed to request a jury instruction on what constitutes a discernable object; and failed to present the testimony of a missing "key witness" via alternative means. For the following reasons, we conclude that appellant's arguments are without merit.
 {¶ 31} In addressing a claim of ineffective assistance of counsel, the burden is placed on the defendant to prove that counsel's performance was deficient, and that the deficient performance prejudiced the defense. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. Bradley, supra, paragraph three of the syllabus.
 {¶ 32} A reviewing court in Ohio must presume that a "properly licensed attorney" is competent to conduct a criminal defense. State v.Hamblin (1988), 37 Ohio St.3d 153, 155. In light of the presumption of competency contributed to counsel in Ohio, the burden upon a defendant to establish ineffective assistance of counsel is a heavy one. State v.Klaus (July 7, 1989), 11th Dist. No. 13-038, 1989 Ohio App. LEXIS 2711. Furthermore, the failure to object to an error would not constitute ineffective assistance of counsel per se, where such failure may be justified as a tactical decision. State v. Gumm (1995), 73 Ohio St.3d 413,428.
 {¶ 33} Appellant cites to Evid.R. 403 to support his argument as to the admission of the photographs. That rule brings into question the trial court's decision to admit the photographs, not counsel's decision on whether or not an objection should be raised. Pursuant to Evid.R. 403, a photograph may be inadmissible if the prejudicial impact substantially outweighs its probative value. State v. Morales (1987),32 Ohio St.3d 252, 257. The photographs in this case illustrated the testimony of several witnesses and demonstrated the position and area of the accident in relation to appellant's car and the victims' vehicle, as well as demonstrated the damage to the vehicles, identified the vehicles involved, and depicted the extent of the victims' injuries. These photographs had clear probative value and while several photographs were gruesome, they were not cumulative.
 {¶ 34} As for counsel's failure to object to the medical reports, appellant refers to "highly inflammatory statements", but only specifically mentions that the phrase "drunk driver" was used in one of the victims' medical reports. The record indicates that in addition to appellant's own admission that he was drinking and driving, the blood samples taken from appellant revealed that his BAC of .122 was above the legal limit, appellant completely failed a field sobriety test, and appellant's breath contained a strong odor of alcohol. In light of the overwhelming testimony presented as to appellant's consumption of alcohol that evening, this court cannot see how the inclusion of "drunk driver" in a medical report would be highly inflammatory or prejudicial to appellant. Based on the above, we conclude that appellant's first two issues of ineffective assistance of counsel are without merit.
 {¶ 35} We proceed to address appellant's arguments that his trial counsel was ineffective when it failed to object to the misstatements of law regarding the topic of assured clear distance and failed to request a jury instruction on a discernable object collectively.
 {¶ 36} Appellant only refers to one example of a possible misstatement of the law on assured clear distance. Appellant cites the following statement from Sgt. Dufour: "You have to be able to stop your vehicle for any object that's in the road that's in front of you. It's assured clear distance law, and you have to be able to drive. And that's not affected by eyesight, it's not affected by weather, it's not affected by day or night. At all times, all conditions, you are required to be able to stop your vehicle without striking any object that's in the roadway in front of you." R.C. 4511.21(A) states "No person shall operate a motor vehicle, * * *, at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface, and width of the street or highway and any other conditions, * * *, and upon any street or highway at a greater speed than will permit the person to bring it to a stop within the assured clear distance."
 {¶ 37} A comparison of the two definitions reveals that, while not verbatim, Sgt. Dufour's explanation of the assured clear distance statute was an accurate description of the law. Appellant has failed to show otherwise.
 {¶ 38} Appellant's argument that his trial counsel should have requested a jury instruction on "discernable object" is also without merit. The record indicates that the issue of whether the victims' vehicle was a discernible object was not raised before the trial court. As a result, appellant has waived this argument on appeal as he failed to advance this issue at the trial court level. Stores Realty Co. v.Cleveland (1975), 41 Ohio St.2d 41, 43.
 {¶ 39} Additionally, appellant does not argue that the vehicle he struck was a discernible object; he simply argues that the vehicle he struck was not discernible within the stopping distance of his vehicle. Furthermore, the crash reconstruction specialist did not testify that appellant was 150 feet away when he first saw the vehicle as appellant asserts. The reconstruction specialist testified that appellant began to apply his brakes 150 feet away from the victims' vehicle. As a result, the issue of when the object became discernible to appellant was an issue for the jury to decide. There was sufficient evidence to indicate the vehicle struck by appellant was in the direct line of appellant's path, had its flashers on, and that appellant's speed made it impossible for him to apply his brakes in time to avoid hitting the victims' vehicle. As a result, even if it were error for appellant's trial counsel to fail to request a jury instruction on discernible object, appellant has failed to show any prejudicial effect. See Flint v. Ace Doran Hauling and RiggingCo. (June 30, 1999), 11th Dist. No. 97-P-0116, 1999 Ohio App. LEXIS 3091.
 {¶ 40} Appellant also argues that his trial counsel's failure to present the testimony of an unavailable witness constituted ineffective assistance of counsel. We do not agree.
 {¶ 41} Appellant argues that his trial counsel should have attempted to introduce testimony taken from a deposition of the missing witness in a civil trial pursuant to Evid.R. 804(B)(1), or in the alternative as a statement against interest under Evid.R. 804(B)(3). Evid.R. 804(B)(1) states that in a criminal trial, testimony taken in a deposition may not be offered if the party against whom the testimony is now offered did not have "an opportunity to develop the testimony by direct, cross, or redirect examination."
 {¶ 42} The record is clear that appellee was not a party to the case from which the deposition was taken and did not have an opportunity to develop the witness' testimony. As a result, the introduction of the witness' deposition testimony would have been erroneous. State v. Weaver
(Dec. 18, 1998), 11th Dist. No. 97-L-209, 1998 Ohio App. LEXIS 6148. Also, even if the deposition testimony included a statement against interest under Evid.R. 804(B)(3), the previously mentioned requirement of 804(B)(1) would still prevent it from being entered into evidence.
 {¶ 43} A thorough examination of the record indicates that the trial court permitted appellant's defense counsel to summarize the content of the missing witness' testimony. The record also demonstrates that appellee was permitted to read a statement into the record given by the witness to appellee on March 12, 2000. The crux of the witness' testimony consisted of statements that appellant wasn't driving "too fast", that appellant had "at least one beer at each bar", and that appellant did not seem intoxicated. However, the missing witness qualified the intoxication comment in stating "but I'm not an expert." The missing witness' testimony pales in comparison to that of the other passenger who observed appellant driving erratically, as well as the overwhelming testimony of the state trooper, the crash reconstruction specialist, and the victims. In fact, admitting that appellant had "at least one beer at each bar" reinforces the fact that appellant was drinking and driving. As a result, we conclude that appellant has failed to demonstrate how he was prejudiced in regards to the missing witness' testimony.
 {¶ 44} Based on the above, appellant has failed to show that counsel's performance was deficient, or in the alternative that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. Appellant's fourth assignment of error is not well taken and is without merit.
 {¶ 45} In his fifth assignment of error, appellant argues that the trial court violated R.C. 2941.25 when it ordered him to serve consecutive sentences as a result of his conviction.
 {¶ 46} The record indicates that appellant was sentenced to nine months on each of the three counts of aggravated vehicular assault. The trial court ordered that the nine-month sentence on counts two and three be served concurrently with each other. The trial court also ordered that the concurrent sentences of counts two and three be served consecutively to that of count one. As a result, appellant was required to spend a total of eighteen months in prison. Following the sentencing hearing, appellant motioned the trial court for a stay of execution on the sentence. This motion was denied on July 5, 2001.
 {¶ 47} Subsequently, appellant immediately began serving his sentence at the Lake Erie Correctional Institution. It has since come to this court's attention that appellant has finished serving his entire eighteen-month sentence and was released from the Lake Erie Correctional Institution on January 1, 2003. Therefore, while the issues involving appellant's underlying conviction may be considered by this court, appellant's assertion that the trial court erred in determining the length of his sentence is a moot issue because appellant has already served the complete sentence and no further relief can be granted. State v. Beamon, 11th Dist. No. 2000-L-160, 2001-Ohio-8712, 2001 Ohio App. LEXIS 5655. Appellant's fifth assignment of error is therefore moot.
 {¶ 48} In his final assignment of error, appellant argues that the mandatory permanent license revocation required by former R.C. 2903.08
violates R.C. 1.58, and as a result, appellant's permanent license suspension should be vacated. We disagree with appellant.
 {¶ 49} Appellant argues that because former R.C. 2903.08 was amended prior to appellant's sentencing, R.C. 1.58 requires that appellant's permanent license revocation be reduced to a period of two to ten years as required by the amended version of R.C. 2903.08. Subsequent to appellant's submission of his brief, this court determined that former R.C. 2903.08 does not violate R.C. 1.58 and as a result, appellant's permanent license revocation is valid. State v. Kaplowitz, 11th Dist. No. 2001-L-025, 2002-Ohio-4217, 2002 Ohio App. LEXIS 4379.
 {¶ 50} In Kaplowitz, this court held that the former version of R.C. 2903.08 categorized aggravated vehicular assault as a fourth degree felony with an alcohol specification. If this court were to apply R.C. 1.58
to appellant's crime, the resulting modification would force the trial court to modify the offense to match the amended version of R.C.2903.08(A)(1), which classifies aggravated vehicular assault as a third degree felony. As a result, this court held that a "trial court should not alter the offense to try to reach a similar sentence. Rather, the prior statute governs for sentencing purposes." Kaplowitz, supra, at *7. Based on this court's holding in Kaplowitz, the former version of R.C.2903.08 permanently revoking appellant's driving privileges is applicable and appellant's sixth assignment of error is overruled.
 {¶ 51} For the foregoing reasons, we hold that appellant's first, second, third, fourth, fifth, and sixth assignments of error are without merit. The decision of the trial court in this matter is hereby affirmed.
Judgment affirmed.
CYNTHIA WESTCOTT RICE, J., concurs.
WILLIAM M. O'NEILL, J., concurs with concurring opinion.