OPINION
This timely appeal arises from a jury verdict awarding damages to Appellee for unpaid construction costs on Appellant's house in Chippewa, Pennsylvania. For the following reasons, we affirm the decision of the trial court.
Appellant, Lonnie Labate, and her now deceased husband, Michael Labate, purchased property in Chippewa, Pennsylvania, to build a home planned and designed by Appellant. While at Baird Brothers Sawmill (hereinafter, Baird Brothers) in Canfield, Ohio, Appellant learned that Appellee, James Augusta d.b.a Augusta Construction, had constructed a large products display there. Impressed by the workmanship, Appellant inquired and learned that Appellee was currently constructing a house in Boardman, Ohio. Appellant visited the construction site in Boardman, and eventually made contact at this site with Appellee. Appellant showed her plans to Appellee and asked that Appellee construct her house in Chippewa. Appellee prepared an estimate and allowance sheet which calculated the cost of construction at $604,000.00 and submitted it to Appellant. At the construction site in Boardman, the parties then entered into a handshake agreement whereby Appellee would build Appellant's house pursuant to the estimate and allowances prepared by Appellee.
Construction of Appellant's home began in late fall of 1992. During the construction, Appellant made numerous changes and added numerous extras not considered in the original estimate and allowances. The changes and extras delayed construction, causing Appellant to terminate Appellee's services in October of 1994, prior to completion. At the time she terminated Appellee's services, Appellant had paid Appellee a total of $535,000.00. Appellee had a number of unpaid accounts on the project as a result of Appellant's changes and extras.
On January 18, 1995, Baird Brothers filed a complaint on account against Appellee for materials Appellee purchased for Appellant's house. On February 17, 1995, Appellee answered the complaint, alleging that it acted as Appellant's agent when it purchased materials from Baird Brothers and that the agency was expressly or impliedly disclosed to Baird Brothers. Also on February 17, 1995, Appellee filed a third party complaint against Appellant, again alleging an agency relationship on behalf of Appellant and that Appellant had the duty to indemnify and hold Appellee harmless for Baird Brothers' claims on account for material provided to Appellant.
Appellant challenged personal jurisdiction over her with a pre-answer motion to quash service of process and to dismiss for lack of personal jurisdiction. Appellant argued that service was improper as the contract was entered into in Pennsylvania, that Appellee was not Appellant's agent, but rather, was the general contractor of the construction project and that Appellant did not have sufficient contacts with the State of Ohio to be reached by Ohio's long-arm statute. Appellee responded that Appellant had personally selected materials from Baird Brothers and that Appellee, as agent, procured the same, that the construction contract was negotiated and entered into in Ohio and that Appellant had significant contacts with Ohio by way of selecting materials from several businesses in Ohio. The trial court overruled Appellant's motion to quash/dismiss on June 1, 1995.
On June 30, 1995, Appellant filed her answer and counterclaim. Interestingly, in her counterclaim, Appellant alleged that she and Appellee entered into contract on September 15, 1992, in Mahoning County, Ohio, whereby Appellee was to construct a house in Pennsylvania. Appellant alleged that Appellee neglected to perform and complete the work as agreed, causing her to incur additional expenses to complete the work. On July 13, 1995, Appellee filed an amended third party complaint, adding allegations that Appellant owed Appellee the amount of $63,763.00 for labor and materials under theories of breach of contract and unjust enrichment.
On March 22, 1998, Baird Brothers dismissed its complaint against Appellee, agreeing to accept payment of $2000.00 with the balance on the account to be paid when Appellee recovered against Appellant.
Jury trial commenced on June 29, 1998, and on July 9, 1998, the jury returned a verdict in favor of Appellee on the third party complaint in the sum of $87,000.00. The jury also found in favor of Appellee on Appellant's counterclaim. Appellant filed motions for a new trial, remittitur and judgment not withstanding the verdict, all of which were overruled by the trial court.
On August 5, Appellant filed her notice of appeal. We note that this appeal has been delayed, primarily by the great length of time the parties required to obtain a transcript herein and by Appellee's five requests for extensions of time within which to file a brief.
Appellant's first assignment of error alleges:
 "THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION TO DISMISS RAISED BEFORE AND DURING THE TRIAL."
Appellant argues that R.C. § 2307.382, Ohio's long arm statute, and Civ.R. 4.3(A), do not permit the trial court to exercise personal jurisdiction over her. Appellant argues that she is a Pennsylvania resident and that the subject matter of the controversy, her house in Pennsylvania, has no connection to the state of Ohio. Appellant also argues that Appellee admitted at trial that there was no contract formed in Ohio and that all work pursuant to the parties' agreement occurred in Pennsylvania. Appellant further contends that any jurisdiction that the trial court may have had was "bootstrapped" to Baird Brothers' original complaint and was relinquished when that claim was dismissed. Based on the record herein and the filings by the parties themselves, we find that this assignment of error lacks merit.
Whether a trial court has personal jurisdiction over a defendant is a matter of law which appellate courts must reviewde novo. Clow Water Systems Co. v. Guiliana Assoc., Inc.
(August 18, 1999), Coshocton App. No. 99-CA-008, unreported;Robinson v. Koch Refining Co. (June 17, 1999), Franklin App. No. 98AP900, unreported, citing Wiltberger v. Davis (1996), 110 Ohio App.3d 46,51-52. In determining whether an Ohio court has personal jurisdiction over a non-resident defendant, the trial court is obligated to: 1) determine whether Ohio's long-arm statute and the applicable civil rule confer personal jurisdiction; and 2) determine whether granting jurisdiction under the statute and the rule would deprive the defendant of the right to due process of law as guaranteed by theFourteenth Amendment to the United States Constitution. Goldstein v.Christiansen (1994), 70 Ohio St.3d 232, 235.
Ohio's long-arm statute, R.C. § 2307.382, provides in pertinent part:
 "(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's * * *
"(1) Transaction any business in this state * * *
"* * *
 "(C) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him."
Civ.R. 4.3(A) (1) provides in pertinent part:
 "(A) When service permitted. Service of process may be made outside of this state * * * upon a person who * * * is a nonresident of this state * * * who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's:
"(1) Transacting any business in this state * * *"
The term, "transacting any business" as stated in both R.C. § 2307.382(A)(1) and Civ.R. 4.3(A) (1) is subject to broad interpretation. Kentucky Oaks Mall Co. v. Mitchell's FormalWear, Inc., (1990), 53 Ohio St.3d 73, 75.
 "`Transact,' as defined Black's Law Dictionary (5 Ed. 1979) 1341, `* * * means to prosecute negotiations; to carry on business; to have dealings * * *. The word embraces in its meaning the carrying on or prosecution of business negotiations but it is a broader term than the word `contract' and may involve business negotiations
which have been either wholly or partly brought to a conclusion * * *.' (Emphasis added.)"
Id.
The liberal interpretation of the phrase, "transacting any business," permits Ohio's long arm statute to reach Appellant in the present matter. As the Ohio Supreme Court has already determined, it is not fatal that Appellee has averred at trial that no formal contract was formed in Ohio. (Tr. p. 448). Furthermore, in this analysis we are not concerned with whether Appellee acted as Appellant's agent in connection with the original cause of action. Rather, our only concern is whether Appellant carried on or prosecuted business negotiations with Appellee and whether these were wholly or partly concluded in Ohio. Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.,supra, 75.
Appellant first raised the issue of personal jurisdiction in a pre-answer motion. The trial court did not hold an evidentiary hearing to determine the issue. In this instance, the party asserting that personal jurisdiction exists is entitled to have the allegations in the pleadings and the documentary evidence viewed in a light most favorable to him, with all reasonable competing inferences resolved in his favor.Goldstein v. Christiansen, 236.
Appellant supported her motion with identical affidavits from both herself and her late husband. The affidavits alleged that Appellant retained Appellee as an independent contractor and that no agency agreement existed. The affiants further averred that Appellant had contact with Baird Brothers in Ohio concerning availability of materials but that she never entered a contract or transacted any business in Ohio.
Appellee responded with his own affidavit alleging that Appellant first contacted him at a construction site in Ohio and that the parties entered into the verbal agreement for the construction of her house while in Ohio. Appellee further alleged that Appellant travelled to Baird Brothers, in Canfield, Ohio, where she personally selected trim for her entire house, special ordered wide plank hardwood flooring and ordered specific materials for a staircase. Appellee also offered the affidavit of Helen Perrine, an employee of Baird Brothers, who alleged that Appellant observed Appellee's work on display at Baird Brothers and inquired as to who had constructed the display. Perrine also alleged that when she told Appellant that it was Appellee's work, Appellant asked where she could find Appellant and that Perrine directed Appellant to the Ohio construction site where Appellee was then working. Perrine also indicated that Appellant had visited Baird Brothers on several occasions to select materials (which were later purchased by Appellee) for the construction of her home.
Construing the allegations in Appellee's favor, it is apparent that Appellant transacted business in Ohio. Appellant contacted Baird Brothers in Ohio and, upon seeing Appellee's workmanship, sought out Appellee at an Ohio construction site. It has been held that the mere solicitation of business does not constitute transacting business. Sprint Communications Co. Ltd.Partnership v. Mr. K's Foods, Inc., (1994) 68 Ohio St.3d 181,185. In the present case, however, Appellant did more than solicit Appellee's services. She deliberately targeted Appellee based on her observation of Appellee's workmanship. Furthermore, Appellee alleges that the construction agreement was reached in Ohio. The standard is clear that a written contract need not be formed to prove a business transaction. The reaching of an agreement short of a formalized contract is well within the contemplation of the definition of, "transacting business" adopted by the Ohio Supreme Court in Kentucky OaksMall Co. v. Mitchell's Formal Wear, supra.
Having determined that Appellant transacted business in Ohio as contemplated by the long-arm statute, we must address the second prong of the personal jurisdiction test; whether exercising personal jurisdiction over Appellant violates the Due Process Clause of the Fourteenth Amendment. An exercise of jurisdiction over a non-resident defendant does not violate due process if the non-resident has certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.Internatl. Shoe Co. v. Washington (1945), 326 U.S. 310, 316. The constitutional touchstone in this analysis is whether the non-resident defendant purposely established minimum contacts in the forum state so that she should reasonably anticipate being called into court in that state. Burger King Corp. v. Rudzewicz
(1985), 471 U.S. 462, 474; Worldwide Volkswagen Corp. v.Woodson (1980), 444 U.S. 286, 295. Jurisdiction is proper where the contacts proximately result from the defendant's actions, thus creating a substantial connection with the forum. BurgerKing Corp. v. Rudzewicz, 475. Jurisdiction is improper where the contacts are random, fortuitous, or attenuated or where they result from the unilateral activity of a third party. Id.
In the matter before us, as earlier addressed, the pleadings and affidavits support that Appellant deliberately pursued Appellee's services in Ohio and entered into an agreement for Appellee to construct her house. The pleadings and affidavits also support that Appellant first sought out and had business dealings with Baird Brothers to select and special order materials for the construction of this house. Furthermore, Baird Brothers attached to its original complaint an accounting of materials Appellant herself selected for the construction of her house. Viewing the pleadings and documents in a light most favorable to Appellee, we conclude that Appellant had sufficient purposeful contacts within the state of Ohio to anticipate being called into court here. Appellant's relationship with Appellee had its origins with Baird Brothers, with whom both parties maintained a relationship specifically related to the construction of Appellant's home. Whether it was Appellant or Appellee who ultimately purchased the materials from Baird Brothers, in as much as Appellant personally selected the materials from Baird Brothers and knew that Appellee would see that they were bought and installed in the project, she should have reasonably anticipated that any dispute concerning those construction materials would be resolved in Ohio.
With respect to Appellant's motion to dismiss during trial, Appellant has set forth no significant argument. She argues only that Appellee admitted that no written contract was formed in Ohio. Tr. 448. It is clear to us, however, that Appellant contends that the admission that no written contract was formed in Ohio is fatal to personal jurisdiction over her. Without addressing the issue that Appellant appears to have waived personal jurisdiction by filing her counterclaim and asking the Ohio court to resolve her own complaints, we hold that the fact that no written contract was formed in Ohio is inconsequential. As we have already explained, the finalized formation of a contract within the forum state is not a precursor to finding of personal jurisdiction. The parties negotiated their agreement and had a "handshake" agreement in Ohio. Furthermore, in her own counterclaim Appellant alleges that a contract was formed in Ohio. Appellant cannot now fault this finding by the trial court.
Appellant also argues that any jurisdiction over her dissipated with the settlement of Baird Brothers' claim against Appellee. Appellant relies solely on State ex rel. Gangale v.Khal (1984), 14 Ohio App.3d 183, for the proposition that when an original complaint is dismissed, a court loses jurisdiction over any counterclaim or cross-claim. However, that case involved an original mandamus action in the Court of Appeals for Cuyahoga County. The court stressed that a court of appeals has original jurisdiction in only five extraordinary writs, thus the dismissal of the underlying mandamus action deprived the court of appeals of jurisdiction over the non-writ counterclaim and cross-claim. As that court could not entertain these as original actions, they could not stand in the Court of Appeals alone for trial. Id., 184. The Gangale analysis is wholly inapplicable to the present case, as an appellate court's original jurisdiction over extraordinary writs has no relation to personal jurisdiction in a court of common pleas.
Regardless, the basis for finding personal jurisdiction in the present matter is Appellant's history of business transactions in Ohio regarding her construction project as described earlier. R.C. § 2307.382(C) gives the trial court jurisdiction over any cause of action arising from those transactions.
For all of the reasons stated, we hold that Appellant's first assignment of error lacks merit.
Appellant's second and third assignments of error respectively allege:
 "THE TRIAL COURT ERRED IN OVERRULING THE MOTION FOR DIRECTED VERDICT MADE AT THE CLOSE OF PLAINTIFF-APPELLEE'S CASE WHEN THERE WAS NOT SUFFICIENT EVIDENCE PRESENTED TO SUPPORT PLAINTIFF-APPELLEE'S BREACH OF CONTRACT CLAIM."
 "THE TRIAL COURT ERRED IN OVERRULING THE MOTION FOR DIRECTED VERDICT MADE AT THE CLOSE OF PLAINTIFF-APPELLEE'S CASE WHEN THERE WAS NO EVIDENCE PRESENTED ON THE ISSUE OF THE `REASONABLE VALUE OF SERVICES RENDERED' TO SUPPORT PLAINTIFF-APPELLEE'S QUANTUM MERUIT CLAIM."
Appellant filed a motion for directed verdict at the close of Appellee's case with respect to both theories of recovery. Tr. 491-495. The trial court overruled Appellant's motion. Tr. 498. Appellant proceeded to present her own evidence and defense and failed to renew her motion for directed verdict at the close of all evidence. The Ohio Supreme Court has expressly stated that:
 "When a motion for directed verdict is made by a defendant at the conclusion of the plaintiff's case and is overruled, the defendant's right to rely on the denial of that original motion as error is not waived when the defendant proceeds to present his evidence and defense as long as the motion is renewed at the conclusion of all the evidence."
Helmick v. Republic-Franklin Ins. Co., (1988), 39 Ohio St.3d 71, paragraph one of the syllabus. (Emphasis added.)
It follows that in the present matter Appellant's failure to renew her motion for directed verdict is fatal to both of these assignments of error. Accordingly, we must overrule her second and third assignments of error.
Appellant's fourth assignment of error alleges:
 "THE TRIAL COURT ERRED BY ALLOWING PLAINTIFF'S COUNSEL TO REFER TO FACTS NOT IN EVIDENCE IN HIS CLOSING ARGUMENT."
Appellant argues that Appellee did not produce any evidence as to the amount Appellant owed and waited until closing arguments to tell the jury the amount of the claim. Appellant specifically refers to comments by Appellee's counsel at pages 698-700 of the transcript. Appellant did not object at any time to that portion of Appellee's closing argument.
"It is axiomatic that great latitude is afforded counsel in the presentation of closing argument to the jury." Pang v.Minch (1990), 53 Ohio St.3d 186, 194. Whether counsel has exceeded the bounds of permissible argument is a matter left to the discretion of the trial court. Id. However, when counsel fails to object to alleged improprieties in his opponent's closing argument, the failure to object waives the right to reversal on appeal absent, "gross and persistent abuse of privilege by counsel." Kubiszak v. Rini's Supermarket (1991),77 Ohio App.3d 679, 689.
A review of the entire record and specifically, the portions referred to by Appellant, reveals that in the present case there was no gross and persistent abuse of privilege. Moreover, we find little basis for Appellant's allegations in this assignment as there was evidence presented at trial concerning Appellee's damages. During closing argument, Appellee's counsel argued that Appellee was paid $535,000.00 on the original agreed construction price, leaving a balance of approximately $69,460.00. Tr. 698. He also argued that Appellee credited Appellant with $54,000.00 for work not completed. Tr. 698. Finally, he argued that Appellant agreed to extras totaling $78,553.00 for a total balance due of $93,000.00. Tr. 698.
While counsel's actual calculations are not precise, his basis for calculation is clear and supported by the evidence at trial. The original estimate which formed the basis of the parties' agreement was entered into evidence. It stated a price of $601,460.00, but the itemized allowances actually totaled $604,460.00. Plaintiff's exhibit 11/Defendant's exhibit 2. Appellant entered into evidence a statement of expenses for building her house which reflected payments to Appellee totaling $535,000.00. Defendant's exhibit 34. Appellee testified to changes and extras totaling $73,199.00. Tr. 436-439, 481. Appellee also testified that there were credits given for various work not done which amounted to $54,510.00. Tr. 416, 441-446. When these figures are appropriately calculated, Appellant's claim was for $88,145.00. Although Appellee's counsel misstated or miscalculated the amount of the claim, it does not rise to gross or persistent abuse of counsel's latitude in closing argument. As a side note, the jury's verdict was less than the amount supported by the evidence, apparently rendering any alleged error harmless. We therefore hold that this assignment of error lacks merit.
Appellant's fifth assignment of error alleges:
 "The jury's verdict was contrary to the manifest weight of the evidence."
Appellant's entire argument states:
 "As stated above, the Plaintiff completely failed to establish the facts necessary to prove a breach of contract claim or a quantum meruit claim. There is absolutely no evidence that would support a verdict of $87,000.00. The case should have never gotten to the jury, and, even viewing the evidence most strongly in Plaintiff's favor, there was not sufficient evidence to sustain the jury's verdict. It is obvious that the verdict was the result of passion or prejudice for it cannot be explained based upon the record of the case. The case must be remanded for a new trial."
App.R. 12(A) (2) states:
 "The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)."
According to App.R. 16(A) (7), an appellant must include in his brief:
 "An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."
In the present case, Appellant has failed to set forth a separate argument with respect to this assignment of error. Rather, she asks us to incorporate and extrapolate her arguments from previous assignments of error, which is prohibited by App.R. 12(A) (2). Appellant has also failed to comply with App.R. 16(A) (7). It is paradoxical to require a party to cite to the record in support of an argument that evidence did not exist, and we cannot fault Appellant for not doing so. However, the rule still requires citations to the authorities on which a party relies and a discussion of the necessary components of the claims and the opposing party's specific failures in that regard. Appellant has failed to do so in this case.
Appellant's argument here is no more than a statement of alleged error with an unsupported conclusion. App.R. 12(A) would permit us to disregard this assignment of error. Hawleyv. Ritley (1988) 35 Ohio St.3d 157, 149. We have recently reaffirmed that it is not the duty of an appellate court to search the record to support an appellant's argument regarding alleged error. State v. Reed (Nov. 12, 1999), Jefferson App. No. 97-JE-73, unreported, *2. Such a search would result in unfairness to the opposing side.
However, as fully discussed on our review of Appellant's preceding assignments of error, we cannot but conclude that the jury's verdict of $87,000.00 was not against the manifest weight of the evidence. Without a complete recitation of the appropriate law and standard of review, the record reveals upon our review in its entirety that this verdict was supported by competent and credible evidence. Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 80. Accordingly, this assignment of error lacks merit.
For all the foregoing reasons, we affirm the judgment of the trial court.
Cox, P.J., concurs in judgment only. Vukovich, J., concurs.
 _______________________ CHERYL L. WAITE, JUDGE