[Cite as *Republic Steel v. Protrade Steel Co., Ltd.*, 2018-Ohio-469.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| REPUBLIC STEEL | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| PROTRADE STEEL CO., LTD. | : | Case No. 2017CA00048 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Court of Common
Pleas, Case No. 2015CV01186

JUDGMENT:        Affirmed

DATE OF JUDGMENT:        February 5, 2018

APPEARANCES:

For Plaintiff-Appellee

BENJAMIN C. SASSE
JOHN Q. LEWIS
SETH J. LINNICK
PAUL L. JANOWICZ
950 Main Avenue, Suite 1100
Cleveland, OH  44113

For Defendant-Appellant

WILLIAM H. FALIN
JOHN M. MOSCARINO
The Hanna Building
1422 Euclid Avenue, Suite 630
Cleveland, OH  44115

*Wise, Earle, J.*

{¶ 1} Defendant-Appellant ProTrade Steel Co., LTD (ProTrade) appeals the February 23, 2017 judgment of the Court of Common Pleas of Stark County, Ohio overruling Protrade's objections to the Magistrate's decision. Plaintiff-Appellee is Republic Steel (Republic).

FACTS AND PROCEDURAL HISTORY

{¶ 2} Republic is a producer of steel, and ProTrade is a scrap metal broker. Republic has been purchasing scrap steel from ProTrade since 2005. At some point during the business relationship, Republic had difficulty making timely payments to ProTrade, and the companies ceased doing business from 2008 to 2013. In 2013, when the parties began doing business again, it was with the agreement that Republic would obtain a letter of credit in favor of ProTrade. HSBC Bank ("HSBC") issued a $5 million letter of credit to Republic in August of 2013, which was increased to $10 million in March of 2014.

{¶ 3} Republic purchased scrap steel from ProTrade by issuing purchase orders. Each purchase order contained terms of payment within 45 days, listed the type and quantity of scrap to be purchased, the unit price of the scrap, and the due date for delivery of the scrap. Under this system, Republic issued a purchase order, ProTrade delivered the quantity of scrap requested, and either Republic paid the amount due or it was submitted to HSBC for payment against the letter of credit.

{¶ 4} During the second half of 2014, Republic's payments became consistently late. In October 2014 a conference call took place between representatives of Republic and ProTrade. Republic acknowledged financial difficulty and requested leniency with the

45-day payment terms. According to ProTrade, all parties agreed that ProTrade would continue to ship scrap even though Republic was behind on payments, but only up to the $10 million available on the letter of credit. As Republic paid down the balance, ProTrade would fulfill outstanding scrap orders in an amount equivalent to that paid down by Republic.

{¶ 5} Following this discussion, Republic continued to place new purchase orders with ProTrade and ProTrade continued to provide scrap as past-due payments were submitted by Republic. The dispute here arose when Republic cancelled five purchase orders between October 2, 2014 and January 12, 2015 because ProTrade failed to complete delivery of the scrap by the due dates specified in the purchase orders.

{¶ 6} According to Republic, even though it was behind on payments for previous orders, ProTrade was nonetheless contractually obligated to deliver each order by the delivery date specified in each purchase order. According to ProTrade, the delivery dates specified in the purchase orders were ignored due to the parties' alternative agreement.

{¶ 7} During this same time, ProTrade contacted Republic regarding past due balances. Republic was warned it needed to catch up on payments or ProTrade would cancel outstanding purchase orders. Republic responded it had not agreed that the orders were cancelled.

{¶ 8} In February 2015, however, Republic sent an email to ProTrade advising that Republic was cancelling 13 outstanding purchase orders, including the five that became the basis of this litigation. ProTrade had not delivered the scrap for any of those five purchase orders. Because delivery had not taken place by the date on the invoice, Republic maintained it had a right to cancel. ProTrade on the other hand, disagreed.

{¶ 9}   Republic cancelled these orders at a time when the market price of scrap fell, meaning if the scrap had been delivered, Republic would have paid more for the scrap than it was worth. On February 13, 2015, ProTrade claimed a market loss due to Republic's cancellation of orders for the undelivered scrap. ProTrade issued a "commercial invoice" to Republic for $1,284,362 in market loss. When Republic refused to pay, ProTrade submitted the market loss invoice to HSBC and HSBC paid the invoice from Republic's letter of credit.

{¶ 10} In June, 2015, Republic filed a breach of contract complaint against ProTrade to recover the $1,284,362.

{¶ 11} In September 2016, upon written agreement of the parties, the matter went before a magistrate for a jury trial. The issues before the jury were whether Republic had the right to cancel overdue purchase orders and whether the due dates in the purchase orders had been modified or waived. The parties stipulated that the five purchase orders were written contracts.

{¶ 12} The trial began on September 19, 2016. At trial, the videotaped deposition of David Spector, Republic's scrap industry expert, was played for the jury as Spector was unavailable at the time of trial. Spector explained that the scrap steel market is a 30-day market, meaning the price of steel scrap fluctuates every 30 days, sometimes dramatically. Negotiations between suppliers and mills therefore take place monthly. Spector further explained that because of fluctuations in the cost of scrap, it is common industry practice for steel mills to cancel overdue purchase orders when the price of scrap drops.  Spector further stated he was personally unaware of a circumstance where a

scrap dealer had invoiced and pursued a mill for market losses after cancellation of an overdue order of unshipped scrap.

{¶ 13} On cross examination, ProTrade first established that Spector was not personally aware of an industry practice where a scrap dealer has the right to recover market losses for unshipped scrap upon a mill's cancellation. ProTrade then sought to introduce pleadings from a U.S. District Court for the Northern District of Ohio case captioned *1795906 Ontario Inc., dba GTA Industrial Metals v. PSC Metals Inc.*, (the GTA pleadings). The matter contained a counterclaim for market losses filed by Spector's former employer PSC Metals, Inc. PSC's counterclaim was based on GTA's cancellation of purchase orders. Spector had been PSC's president the year the GTA pleadings were filed, but he had stepped down the month the counterclaim was filed. Spector testified had no knowledge or memory of the GTA litigation, nor any recollection of doing business with GTA, and ProTrade presented no evidence to demonstrate that Spector had any role in the GTA litigation. At trial, the magistrate excluded this portion of Spector's testimony.

{¶ 14} On September 23, 2016, the jury returned a unanimous verdict in favor of Republic in the amount of $1,284,392 plus interest accrued since June 5, 2015.

{¶ 15} On September 28, 2016, the magistrate filed a proposed entry recommending the trial court enter a verdict reflecting the jury's decision. The trial court did so on the same day. On October 11, 2016, ProTrade filed objections to the magistrate's decision, and supplemental objections on January 10, 2017. The trial court overruled ProTrade's objections on February 23, 2017.

{¶ 16} ProTrade now brings this appeal, raising five assignments of error:

I

{¶ 17} "THE TRIAL COURT ABUSED ITS DISCRETION BY OVERRULING APPELLANT'S OBJECTIONS AND ADOPTING THE MAGISTRATE'S DECISION BECAUSE APPELLANT WAS MATERIALLY PREJUDICED BY THE EXCLUSION OF EVIDENCE AND TESTIMONY RELATING TO THE GTA PLEADINGS DURING CROSS-EXAMINATION OF APPELLEE'S SCRAP METAL INDUSTRY EXPERT, DAVID SPECTOR."

II

{¶ 18} "THE TRIAL COURT ABUSED ITS DISCRETION BY OVERRULING APPELLANT'S OBJECTIONS TO THE MAGISTRATE'S DECISION BECAUSE THE GTA EVIDENCE AND TESTIMONY WAS RELEVANT AND ADMISSIBLE REBUTTAL EVIDENCE AND APPELLANT WAS MATERIALLY PREJUDICED BY ITS EXCLUSION."

III

{¶ 19} "THE TRIAL COURT ABUSED ITS DISCRETION BY OVERRULING APPELLANT'S OBJECTIONS TO THE MAGISTRATE'S DECISION BECAUSE THE GTA PLEADINGS AND TESTIMONY SHOULD HAVE BEEN PLAYED TO THE JURY FOR IMPEACHMENT OF PLAINTIFF'S EXPERT."

IV

{¶ 20} "THE TRIAL COURT ABUSED ITS DISCRETION BY ADOPTING THE MAGISTRATE'S DECISION BECAUSE THE MAGISTRATE PERMITTED REPUBLIC STEEL'S COUNSEL TO MAKE PREJUDICIAL COMMENTS THROUGHOUT TRIAL, WHICH MATERIALLY PREJUDICED APPELLANT'S RIGHT TO FAIR TRIAL."

V

{¶ 21} "THE TRIAL COURT ABUSED ITS DISCRETION BY ADOPTING THE MAGISTRATE'S DECISION TO EXCLUDE EVIDENCE AND TESTIMONY OF THE PAST BUSINESS RELATIONSHIP BETWEEN APPELLANT AND APPELLEE."

I, II, III

{¶ 22} In its first three assignments of error, ProTrade argues the trial court abused its discretion when it overruled ProTrade's objections to the magistrate's evidentiary rulings regarding aspects of ProTrade's cross-examination of David Spector, Republic's scrap metal industry expert. We address these arguments together.

{¶ 23} ProTrade argues it was materially prejudiced by the exclusion of the GTA pleadings for cross-examination of Spector, rebuttal evidence, and impeachment evidence. We disagree.

{¶ 24}  We review an appeal from a trial court's order adopting a magistrate's decision for an abuse of discretion. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

Cross-examination and Rebuttal

{¶ 25} First, ProTrade mischaracterizes Spector's testimony. ProTrade argues it was entitled to introduce the GTA pleadings on cross-examination because Spector testified that there is no industry practice of attempting to recover market loss, and was permitted to testify that scrap dealers do not seek recovery for market losses. On direct

examination, however, Spector testified only that he has not seen an invoice for market losses:

> Q. Have you ever seen an invoice in your time in the scrap business where a company is being invoiced for market losses?
>
> A. No.

{¶ 26} Spector Dep. T. 68-69. On cross-examination, ProTrade also raised the issue:

> Q. You're not aware of an industry practice that would suggest to a scrap dealer that it has the right to recover market losses for unshipped scrap in the face of a mill's cancellation, correct?
>
> A. Correct.
>
> Q. So you personally are not aware of that occurring, correct?
>
> A. Yes, I'm not aware of it.
>
> Q. So you would agree that it's possible that it has happened in this large steel industry, and you're just not aware of it?
>
> A. I can't say I'm aware of every contract that was ever entered into by a scrap yard and a steel mill or broker.

{¶ 27} Id. 89-90. Thus Spector testified only that he was personally unaware of such practice.

{¶ 28} Additionally, the GTA pleadings ProTrade sought to admit did not contradict Spector's testimony as that matter did not involve a claim for market losses in the domestic steel industry. Rather the GTA litigation involved the sale of a different product to an international broker under terms requiring pre-payment. *Id.* 95. In the excluded portion of his testimony, Spector explained that different rules apply in an international sale. *Id.* What is more, PSC's counterclaim for market losses in the GTA litigation is not an invoice for market losses based on a mill's cancellation of an overdue purchase order.

{¶ 29} Cross-examination is permitted on all relevant matters and matters affecting credibility. Evid.R. 611(B). A counterclaim by PSC in the GTA litigation was not relevant as it was not analogous to the invoice in the instant matter, was not relevant to Spector's testimony that he is personally unaware of an industry practice of invoicing for market losses, and did not go to Spector's credibility. The trial court did not abuse its discretion in adopting the magistrate's decision to exclude this portion of cross-examination of Spector's testimony and the GTA pleadings.

{¶ 30} ProTrade's second argument -- that the GTA evidence and testimony were relevant and admissible rebuttal testimony – is also unavailing.

{¶ 31} ProTrade argues it had an unconditional right to present rebuttal evidence and testimony. ProTrade cites *Phung v. Waste Mgt., Inc.*, 71 Ohio St.3d 408, 644 N.E.d 286 (1994) in support of this argument. *Phung*, however, concerned whether a plaintiff may present rebuttal witnesses who were not disclosed on its witness list. The *Phung* court found "[a] party has an unconditional right to present rebuttal testimony on matters which are first addressed in an opponent's case-in-chief and should not be brought in the rebutting party's case-in-chief." *Id.*, 410. ProTrade called no witnesses in rebuttal and

presented no rebuttal evidence. ProTrade's argument concerns the scope of cross-examination, not the presentation of rebuttal witnesses.

{¶ 32} Moreover, as noted by Republic, ProTrade did not raise this specific unconditional right argument in its objections to the magistrate's decision, and has therefore forfeited all but plain error. We find no error plain or otherwise and reject ProTrade's rebuttal argument.

Impeachment

{¶ 33} ProTrade further argues that the GTA pleadings and testimony should have been admitted for impeachment purposes. ProTrade sought to admit extrinsic evidence of contradiction to impeach Spector. The trial court found this evidence inadmissible pursuant to Evid.R. 616(C). That rule addresses methods of impeachment:

> (C) Specific Contradiction. Facts contradicting a witness's testimony may be shown for the purpose of impeaching the witness's testimony. If offered for the sole purpose of impeaching a witness's testimony, extrinsic evidence of contradiction is inadmissible unless the evidence is one of the following:
>
> (1) Permitted by Evid. R. 608(A) [opinion and reputation evidence], 609 [conviction of a crime], 613 [prior inconsistent statement or conduct], 616(A) [bias], 616(B) [sensory or mental defect], or 706 [learned treatises];
>
> (2) Permitted by the common law of impeachment and not in conflict with the Rules of Evidence.

{¶ 34} The trial court correctly found that the exhibits ProTrade sought to introduce fit none of these exceptions. ProTrade argues here that Republic "opened the door" to this line of questioning when it asked Spector on direct exam if he was aware of prior claims for market losses. But as discussed above, this is a misreading of Spector's testimony. Spector was asked on direct examination whether he was aware of a practice of invoicing a mill for market losses in the face of a cancelled purchase order. ProTrade improperly attempted to impeach Spector with extrinsic evidence of a crossclaim for market losses in a case Spector had no knowledge of. Accordingly, the trial court did not abuse its discretion in rejecting Protrade's impeachment argument and adopting the magistrate's decision.

{¶ 35} The exclusion of the GTA evidence was proper and therefore did not materially prejudice ProTrade's ability to present a meaningful defense. The first three assignments of error are overruled.

IV

{¶ 36} In its fourth assignment of error, ProTrade argues the trial court abused its discretion by overruling ProTrade's objection to the magistrate's decision because counsel for Republic was permitted to make prejudicial comments affecting ProTrade's right to a fair trial. Specifically, ProTrade argues it was prejudiced because Republic was permitted to make comments that ProTrade "stole" or "took" money from Republic, and "committed a fraud" during opening statement and closing argument. ProTrade further argues the trial court should have provided a curative instruction. We disagree.

{¶ 37} During opening statement, T. 228-230, the following took place:

[Counsel for Republic]: One of the first things I learned when I was a child, one of my first memories was when I stole my brother's Matchbox car and my mom taught me the lesson that I don't steal things that don't belong to me.

Some 40 years later I find myself in this courtroom asking for that rule to be enforced again. ProTrade took over 1.28 million dollars from the men and women of Republic Steel and was not entitled to do so.

\* \* \*

[Counsel for ProTrade]: Objection. May we approach?

\* \* \*

[Counsel for ProTrade]: The Court has granted summary judgment on the conversion plan (sic) filed by Republic. [Counsel for Republic] just said "stole." We don't want – this is a contract case. This is not a case of theft or conversion and I –

[Counsel for Republic]: I said they took money they weren't entitled to take. That's a breach of contract.

The Court: I do believe you used the word "stole."

[Counsel for ProTrade]: Yeah; then you said you're in this court now 40 years old. The clear inference is that you're saying that they stole something.

The Court: We're in opening statement; let's not use stole or theft. Okay?

[Counsel for Republic]: All right.

[Counsel for ProTrade]: Thank you, Your Honor.

{¶ 38} Counsel for Republic then continued opening statement at T. 230;

[Counsel for Republic]: Ladies and gentlemen of the jury, I'm here 40 years later asking you, as members of the jury, to tell ProTrade that they owe the money back that they took from Republic Steel's bank. \* \* \*

{¶ 39} Later in opening statement, counsel for Republic stated that when ProTrade created the invoice for market losses on scrap it never delivered and submitted the invoice to HSBC, ProTrade "* * * breached the contract; it committed a fraud." ProTrade's objection was overruled. This is the only use of the word fraud cited in ProTrade's brief.

{¶ 40} In closing argument, counsel for Republic continued to characterize ProTrade's draw on the letter of credit as taking. T. 1236, 1276, 1337, 1339 and 1331. ProTrade lodged no objection.

{¶ 41} It is well settled that counsel is accorded wide latitude in opening statement; however, counsel is not permitted to make statements of law or fact that are obviously erroneous. *Silver v. Jewish Home of Cincinnati*, 190 Ohio App.3d 549, 2010-Ohio-5314, 943 N.E.2d 577 (12th Dist. Warren). The same is applicable to closing argument. *Pang v. Minch*, 53 Ohio St.3d 186, 59 N.E.2d 1313 (1990) paragraph 2 of the syllabus. The determination of what is appropriate in closing argument is left to the sound discretion of the trial court. *Id.* paragraph 3 of the syllabus. Improper comments will be grounds for reversal "only if the circumstances are of such a reprehensible and heinous nature as to constitute prejudice." *Bell v. Mt. Sinai Med. Ctr.*, 95 Ohio App.3d 590, 601, 643 N.E.2d 151(1994); *Kubiszak v. Rini's Supermarket*, 77 Ohio App.3d 679, 688, 603 N.E.2d 308(1991).

{¶ 42} First, the crux of this dispute was whether or not Republic had a right to cancel the overdue purchase orders and whether therefore ProTrade appropriately drew on Republic's letter of credit for market losses. If Republic had a right to cancel the orders, and ProTrade thus had no authority to draw the losses from Republic's letter of credit, took or taking is an appropriate characterization of the draw on the letter of credit and

what Republic's counsel believed the evidence would show. The characterization was equally appropriate at the close of evidence. What is more, ProTrade never objected to use of the words took or taking. A failure to object waives all but plain error. The plain error doctrine is applicable in civil cases only where the error "seriously affects the basic fairness, integrity, or public reputation of the judicial process." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099(1997) syllabus.

{¶ 43} Next, while ProTrade faults the trial court for failing to provide a curative instruction to the jury as to use of the word "stole," ProTrade never requested a curative instruction. The failure to request a curative instruction at the time error can be avoided precludes any claim of error on appeal. *Whitenight v. Dominique*, 102 Ohio App.3d 769, 771 658 N.E.2d 23 (3rd Dist.1995).

{¶ 44} Finally, the trial court instructed the jury that opening and closing arguments are not evidence and should not be treated as such. T. 227-228, T 1219-1220. A jury is presumed to have properly followed instructions given by a trial court. *Pang v. Minch*, 53 Ohio St.3d 186, 59 N.E.2d 1313 (1990) paragraph 4 of the syllabus.

{¶ 45} We do not find the single use of the word fraud to be so reprehensible as to prejudice ProTrade's case. We further find no plain error resulted from counsel's use of the words took or take. We therefore find the trial court did not abuse its discretion in overruling ProTrade's objections to the magistrate's decision. The fourth assignment of error is overruled.

V

{¶ 46} In its final assignment of error, ProTrade argues the trial court abused its discretion by adopting the magistrate's decision to exclude testimony of the past business relationship between itself and Republic. Specifically, ProTrade argues the trial court abused its discretion in adopting the magistrate's decision to exclude certain testimony from Peter Paris, ProTrade's former chief financial officer. The excluded portion of Paris's testimony was in regard to a 2009 incident where Republic had failed to pay what it owed ProTrade and ProTrade was forced to make a claim on its credit insurance policy and pay a $175,000 deductible. According to ProTrade, exclusion of this piece of evidence materially prejudiced its case because it prevented ProTrade from presenting evidence of the past business relationship between the parties, and therefore its ability to explain why ProTrade was justified in delaying deliveries to Republic in 2014 and 2015. We disagree.

{¶ 47} First, as the trial court noted, the magistrate permitted extensive evidence regarding the parties' past business relationship. Paris was permitted to testify that Republic had a history with ProTrade of tardy payment and non-payment that caused ProTrade to stop doing business with Republic in 2008. Further, Paris testified based on that past history, ProTrade required Republic to obtain a $10 million dollar letter of credit before they would resume business with Republic in 2013. T. 888-894, 900-906.

{¶ 48} Next, ProTrade's payment of an insurance deductible in 2009 had nothing to do with the contracts in this matter, nor the issues before the jury. The matter before the jury concerned five purchase order contracts from 2014 and 2015. The narrow issues before the jury were 1) whether Republic had the right to cancel the 2014 and 2015

purchase orders, and 2) whether the payment due dates in the purchase orders had been modified or waived. T. 1227-1228, 1233. The payment of a deductible in 2009 by ProTrade was not relevant to either one of these questions.

{¶ 49} In support of its argument, ProTrade cites this court's decision in *Edgar Spring, Inc., v. Tuscarawas Cty.*, 5th Dist. No. 88AP010010, 1988 WL 90312 (Aug. 25, 1988). We find *Edgar Spring* distinguishable.

{¶ 50} *Edgar Spring* involved a breach of an exclusive dealing contract which required Edgar Spring to supply all necessary sand and gravel to Tuscarawas County for road repairs. Tuscarawas County purchased sand and gravel elsewhere, and Edgar Spring brought an action for breach of contract. Tuscarawas County's defense was that Edgar Spring breached the contract by failing to be open on a daily basis and thus the county could look to other suppliers for materials. Edgar Spring sought to introduce evidence that the county falsified receipts to cover up the fact that it purchased materials from other suppliers. The trial court excluded the evidence, and this court reversed that decision.

{¶ 51} In *Edgar Spring*, the excluded evidence was directly related to the contract dispute at issue and was relevant to elements of Edgar Spring's claim. ProTrade's 2009 payment of an insurance deductible, however, had nothing to do with the 2014 and 2015 purchase contracts before the jury and nothing to do with ProTrade's defense.

{¶ 52} The trial court did not abuse its discretion in adopting the magistrate's decision to exclude this evidence. The final assignment of error is overruled.

By Wise, Earle, J.

Gwin, P.J. and

Hoffman, J. concurs separately


EEW/rw

*Hoffman, J., concurring*

**{¶53}** I concur in the majority's analysis and disposition of all five of Appellant's assignments of error. I write separate only with regard to the standard of review this Court is to apply when reviewing a trial court's order adopting [and/or modifying or reversing] a magistrate's decision.

**{¶54}** The majority applies an abuse of discretion standard (Majority Opinion at ¶24). I believe the standard of review depends upon the nature of the objection made to the trial court. For a fuller analysis see my concurring opinion in *Thompson Thrift Construction v. Lynn, et al.,* 5th Dist. Delaware No. 16 CAE 10 0044, 2017-Ohio-1530, ¶130 (Hoffman, concurring).

_____

HON. WILLIAM B. HOFFMAN